[Decided January 27, 1888.]

CHARLES B. WRIGHT *v.* CITY OF TACOMA AND JOHN MURRAY, TREASURER.

1. MUNICIPAL CORPORATIONS—STREET ASSESSMENTS—INJUNCTION TO RESTRAIN—ESTOPPEL IN EQUITY.—When a city charter provides that the council may pass a resolution to improve a street, and may file a survey and estimate of cost, all of which shall be published, and that all opposed to the improvement may protest within ten days after such publication; and that if no such protest is made, the assessment shall be deemed assented to: *Held*, that equity will not set aside such assessment at the instance

of an abutting property owner, who made no protest within the required time, and not until the work was partially done and the city had become liable for the improvement, but will leave him to his legal remedy.

2. SAME — PETITION — SIGNERS OF — CHARTER OF TACOMA — PRESUMPTION.— Under the ninth subdivision of section 48 of the city charter of Tacoma, requiring a petition to the city council for street improvements to be signed by the resident owners of more than half of the abutting property, but not providing how the fact of residence shall appear, such petition need not show that the signers are a majority of such resident owners, but it will be presumed that the city council, in ordering the improvement, judged correctly, unless the contrary is made to appear.

3. SAME — PETITION BY ABUTTING OWNER — AMOUNT IN INTEREST TO BE REPRESENTED.—Under said section 48 of the Tacoma city charter, only a majority of such abutting property owned by residents need be represented in such petition.

4. SAME — ADJUSTMENT — WIDTH OF CROSS STREET.—In determining the frontage of such abutting property, the width of each street crossing the improved street should be subtracted from the total length of improvement to be made.

APPEAL from the District Court holding terms at Tacoma. Second District.

This action was brought by an abutting property owner on a street ordered to be improved by the city of Tacoma, against said city and its treasurer, to restrain them from collecting certain assessments levied upon his property, situate on said street, to pay for such improvement. The action was brought for himself and all others similarly situated. The plaintiff sought equitable relief on the ground that the petition of abutting owners to the city council of Tacoma was insufficient in form and substance, and not signed by the requisite number of owners on said street, as required by subdivision 9 of section 48 of the city charter, to confer jurisdiction upon the council to order the improvement. Subdivision 9 of said section 48 is set forth in the opinion of the court. The illegality of the assessment, multiplicity of suits by other owners similarly interested, and cloud upon plaintiff's title imminent by the threatened illegal sale of plaintiff's property, are made the grounds for invoking the equitable jurisdiction of the court. The city and its authorities contested the alleged insufficiency of the petition, and of the number of its signers,

and pleaded an estoppel arising out of the fact that plaintiff received the full benefit of the improvement, and had full notice and knowledge of every step taken by the municipal authorities in making the same, and had failed to make any protest or objection, when the law made it his duty to do so, until after the time fixed by the charter, and not until after the contract for the improvement had been let and partially completed, and the city had become liable for the improvement. All other necessary facts appear in the opinion of the court. The court below dismissed the bill, and defendant recovered judgment, from which plaintiff appealed.

*Mr. Evans,* and *Messrs. Sears & Ashton,* for the Appellant.

The proceedings of the council were absolutely void, because no petition, such as is required by section 48 of the charter, was ever made or presented. This defect is jurisdictional. (2 Dillon on Mun. Corp., 3d ed., sec. 769.) If, in fact, the petition had been signed by a majority of "resident owners" of "more than half of the property," etc., without being designated as such, it would have conferred no jurisdiction on the council to act. (*People* v. *Spencer,* 55 N. Y. 1.) The fact that the petition purported to be or was apparently signed by more than half of said resident owners could give the council no jurisdiction. (*In re Sharp,* 56 N. Y. 257.) The mere fact that the council determined that a majority, etc., had petitioned, is not conclusive. It had the power to act if a majority, etc., petitioned, but without such a petition, they had no authority whatever. They could not create the power by resolving that they had it. (*People* v. *Supervisors,* 11 N. Y. 563; *Westfall* v. *Preston,* 49 N. Y. 353; *In re City of Buffalo,* 78 N. Y. 362.) A court of equity will grant an injunction when there are a large number of persons interested in the question involved in the controversy, to avoid multiplicity of suits. (*Cadigan* v. *Brown,* 120 Mass. 493; *Schofield* v. *Lansing,* 17 Mich. 437; 1 Pom. Eq. Jur., secs. 257, 260, 268, 270; Pom. Rem. & R. R., sec. 2691; *Glenn* v. *Waddel,* 23 Ohio St. 605.)

*Mr. Thomas Carroll, City Attorney,* for the Appellee.

Powers expressly granted or necessarily implied are not to be defeated or impaired by a stringent construction. (*Kyle* v. *Malin,* 8 Ind. 37.) The city council is the judge as to whether a proper petition has been presented, or as to the regularity and validity of proceedings, and are required to hear and decide upon all objections which may be presented by any person interested, and their decision shall be a final determination. (Sec. 121, City Charter Tacoma; *Dolan* v. *Mayor et al.,* 62 N. Y. 473.) The city council did so find, and their determination is conclusive. (*McCall* v. *Town of Hancock,* 20 Blatch. 344; *In re Kiernan,* 62 N. Y. 457; *Town of Venice* v. *Murdock,* 92 U. S. 494.) The assessment is not a cloud upon plaintiff's title if the petition and proceedings are void upon their face, as claimed by appellants. The illegality of the tax alone, or the threat to sell property for its satisfaction, cannot of themselves furnish ground for equitable interposition. (Cooley on Taxation, p. 536; 2 High on Injunctions, sec. 1270; Dillon Mun. Corp., sec. 611; *Dows* v. *City of Chicago,* 11 Wall. 109; *Hannewinkle* v. *Georgetown,* 15 Wall. 547.) Appellants having received the benefits of the improvement, having personal knowledge of every step taken by the city council in making the same, and having waited until the same was completed, without protest or objection, are estopped. (*Taber* v. *Ferguson,* 9 N. E. Rep. 723; *Peters* v. *Griffith,* 8 N. E. Rep. 727; Cooley on Taxation, p. 573; *Kellogg* v. *Ely,* 15 Ohio St., p. 64; *Stanley* v. *Gadsby,* 10 Peters, 521; *Morrison* v. *Heirshire,* 32 Iowa, 271; *Brent* v. *Bank of Washington,* 10 Peters, 596.

Mr. Justice LANGFORD delivered the opinion of the court.

There are from the transcript two questions to be decided:

1. Whether the city council, by authority conferred upon that body by the city charter, had authority to form an assessment district for the purpose of grading a street, upon the petition presented to the council, which appears in the record.

2. If they had not, then, if appellants, lot owners in

said district, stood by, without objection or protest, after notice of the intention of the city that it would proceed to let the contract for grading, upon the hope of paying the contract price out of assessments upon appellants and other lot owners, can, after the contract is thus let, object to the assessment upon account of defects in said petition.

The city charter contains, among other things, the following provisions:

"*Ninth.* To provide for opening, widening, clearing, grading, graveling, bridging, macadamizing, curbing, guttering, draining, or other manner of improving or repairing of streets, highways, and alleys, and for the construction and repairing of sidewalks upon said streets, highways, and alleys. Said improvements shall not, however, be made at the expense of the owners of said lots or parcels of land fronting upon such street, highway, or alley, or portion thereof proposed to be improved in any of the manners herein recited, unless the resident owners of more than one-half of the property fronting upon the proposed improvement shall have petitioned the city council to order such improvements to be made, except as provided in section 115.

"Sec. 114. Before ordering any work done or improvements made authorized by section 48 of the city charter, the city council shall pass a resolution declaring its intention so to do, and shall thereafter cause a survey, diagram, and estimate of the entire cost thereof to be made by the city surveyor, and the said survey, diagram, and estimate shall be filed in the office of the city clerk for the inspection of all parties interested therein, and the said city clerk shall forthwith cause a notice of such filing of such survey, diagram, and estimate to be published weekly for two successive weeks in some newspaper published in the city; such notice must contain a true copy of said resolution of intention, and must specify the street, highway, or alley, or part thereof, proposed to be improved, and the kinds of improvement proposed to be made, together with such estimated cost and expense thereof, and that if sufficient remonstrance be not made before the expiration of ten

days after date of last publication, said improvement will be made at the expense of owners of the lots and the parcels of land fronting upon the street, highway, or alley proposed to be improved within the limits of the improvement thereof lengthwise of said street, highway, or alley.

"Sec. 115. If, within ten days from the final publication, the persons owning one-half or more of the lots or parcels of land fronting upon the street, highway, or alley proposed to be improved, within the limits aforesaid, shall file with the city clerk a remonstrance against said improvement, grade, or alteration, the same shall not be made at the expense of the owners of the lots or parcels of land fronting upon such street, highway, or alley as aforesaid, unless the city council shall deem such work or improvement necessary; but no such work shall be done, or improvement be made, unless upon a unanimous vote of all councilmen then present.

"Sec. 116. If no such remonstrance be made and filed, as provided in the last section, the owners of the lots and parcels of land fronting upon such street, highway, or alley proposed to be improved, within the limits aforesaid, shall be deemed to have consented to the making of said improvement; or if such remonstrance has been made and filed, and the said city council nevertheless order such work to be done or said improvement to be made, as provided in section 115, the council, at its earliest convenience thereafter, and within six months from the publication of such notice, may establish the proposed grade or make the proposed improvement, at the cost and expense of the owners of the lots and parcels of land fronting upon the street, highway, or alley proposed to be improved, within the limits aforesaid, either by or through the street commissioner or other officer designated by the council, or by contract let by the council to any person; *provided,* that no contract shall be made providing for the payment to the contractor for such improvement of any greater amount than the estimated cost and expense thereof published as aforesaid, to complete some general system of improvement."

It is claimed by the appellant that the petition and all the

proceedings under it are void, because upon its face it does not state that the lot owners are residents.

The charter provides that the signers must be residents; but it does not provide how the fact of residence shall be made to appear to the council. When a statute provides a mode in which a thing shall be made to appear, that mode must be strictly followed; when it does not provide such mode, the officers may adopt what mode they please to determine the fact. The city council adopted its own mode to determine the fact of residence; which it had a right to do.

Much has been said about another petition for another district, with different boundaries, but we deem the whole affair as irrelevant. The boundary of an assessment district must be ascertained before assessment or taxation can be had therein, and the purpose for which it is desired must, under this charter, appear.

Each of these must appear by petition. The same district cannot have more than one boundary specified therein, as there can be but one boundary to an assessment district, and each signer of a petition must by it agree to the same boundary. Two different papers might petition for the same boundary, but each would, for the very reason that they agreed as to the boundary and as to the purpose for which the district should be formed, be one petition. If two papers are signed, one different from the other either as to purpose or as to boundaries, such can never be joined as one petition, but each must stand or fall by itself.

It is said that the petition in this case was not signed by a majority of the resident owners of abutting property. The council has been given the power to judge whether it was so signed; it has exercised its judgment, and by the exercise thereof has declared that the petition has been so signed. It will be presumed that that judgment is right, unless the appellant has proven the contrary. The transcript does not prove the contrary. It is claimed by the appellant that it does.

A majority of resident owners of more than half of the property fronting the proposed improvement, does not mean

a number of feet more than one-half of the whole line of improvement. The owners of the property fronting are the owners of lots, as they appear by this petition, generally of 120 feet front. Ownership does not embrace the streets crossing the street to be graded. The number of feet of the whole line of improvements equals the lot frontage plus the width of the several streets which cross the improved street; hence, to find the frontage owned, the width of each street crossing must be subtracted from the line of the improvements.

The plat in the transcript shows that eighteen streets cross the street to be improved; if these eighteen streets were subtracted from the number of feet of the line of improvements, the whole ownership of lot frontage would be ascertained.

The record does not show the width of these streets which should be thus deducted, and without it no calculation can be made as to the total ownership fronting the proposed improvements. There are some figures upon the bottom of the petition, but they form no part thereof, and cannot make the petition less valid.

These figures, as well as the pleadings, admit that the line of improvement is a certain length, but neither the pleadings nor the figures upon the petition attempt to give the aggregate of feet front of all the lots owned. Not having this data, we cannot know how many feet are a majority of the lots fronting. Three non-residents signed to the petition, representing 360 feet frontage.

Deduct this 360 feet and the petition represents 2,040 feet. Probably this 2,040 feet of fronting lots are more than half the frontage of lots along the whole line of improvements. The city council so determined, and as there was nothing in the transcript to prove otherwise, the bill was properly dismissed.

It is the opinion of the writer of this, and a majority of the court, that the clause in subdivision 9 of section 48, that "the resident owners of more than half the property fronting upon the proposed improvement," means a majority of prop-

erty represented by resident owners. To give the clause any other construction would be to preclude all improvement upon streets as much as half of which was owned by non-residents.

Resident owners would be defeated, because non-resident owners would not sign a petition; indeed, in such a case, if all the non-resident and resident owners should join, they could not improve the street, for there is no provision whereby non-residents can sign a petition. The residents alone would be counted, and as they would not own a majority of the frontage, no petition could avail.

It is not probable that the legislature intended any such absurdity, but rather intended that residents alone should sign the petition, and those who represented a majority of the frontage owned by residents.

This intention is the more probable, because the mere forming of an assessment district can harm no one. It is the resolution which is passed, after the formation of the district, to improve, which is the first step in the line of assessment. The transcript does not show that a sufficient number of residents to represent more than half the property owned by residents did not sign this petition, and for this reason the decree dismissing the bill ought to be affirmed.

The charter provides that after an assessment district is formed the council may pass a resolution to improve the street, and file a survey and estimate of costs, and all this shall be published in a newspaper, so all that are opposed thereto may, within ten days after this notice, protest. If no protest is made within ten days, all shall be deemed to have assented to the assessment, and the city may contract the work.

This is the proceeding which alone threatens to assess the property or place a lien upon it. To this proceeding the appellant might have protested according to the charter, and from this resolution to improve the appellant might have a certiorari.

The appellant did not within the ten days make any

objection or protest or take any proceedings at law, though he, knowing the charter, must have known that unless objection was so made that the contract would be let, and the city become liable to pay for the improvement.

Nay, appellant not only waited in silence the ten days, and until the city had made itself liable for the improvement, but he waited until part of the work was done under the contract before he made any objection. After the city had entered into the contract, the work would be done at all events, and at the expense of all taxpayers within the city, if not done under these proceedings.

Thus appellant, by remaining silent when good faith would require him to speak, would gain the advantage of having his street improved at the expense of others. This would be a moral fraud.

A court of equity will not assist in the perpetration of this fraud, but will leave him to pursue his remedy at law, if he has any.

For this reason, the decree of the District Court ought to be affirmed, and it is so ordered.

Mr. Chief Justice JONES concurred specially, as follows:

I concur in the result arrived at in this case, but am not ready to concur in the construction announced as to the ninth subdivision of section 48 of the charter of the city of Tacoma.

That subdivision gives the power to the city government to provide for the opening and grading of streets, but it provides that such improvements shall not be made at the expense of the owners of the lots fronting upon the street or portions thereof to be improved, "unless the resident owners of more than one-half the property fronting upon the proposed improvement" petition therefor. I think there can be doubt of the intent of the legislature, in the use of the words quoted, and that no form of words could have been used to more clearly express that intent. The petition must be made by resident owners, and such petitioners must be the owners of more than one-half the property fronting upon the proposed improvement.

We have a right, and it is our duty, to seek for the intent of the legislature, and construe words used to conform to and express that intent; but to my mind, the words here used do not admit of any other construction than the one I have given, and no other is necessary to sustain the conclusion arrived at.

Whatever of hardship may be supposed to exist in the rule thus established, or of advantage to be derived by any other rule, is for legislative and not judicial consideration.

Mr. Justice TURNER concurred specially, as follows:

I concur in the affirmance of the judgment of the court below, on the ground that the petition found in the record was sufficient to authorize the city council of Tacoma, under its charter, to establish an assessment district, and to take the necessary preliminary steps to cause the street included within the assessment district to be improved.

By construing the ninth subdivision of section 48 and section 114 of the charter together, the legislative intent is made apparent. That intent was, that the steps preliminary to street improvements should be set in motion upon the petition of a majority of the resident lot owners within the proposed assessment district, but that the work should not be entered upon until an opportunity had been offered to all the lot owners, resident and non-resident, within such district, to express their wishes.

This construction makes the provisions of the two sections harmonious, and gives to each a sensible application. It does no violence to the language employed in the ninth subdivision of section 48, because that language is already ambiguous. The words, "resident owners of more than one-half of the property fronting upon the proposed improvements," is a very inapt form of expression to convey the meaning contended for by appellant, namely: "a majority of one-half the property owners, who shall also be residents of the city." A very slight transposition of the words employed, without any addition whatever, will make them convey the meaning which I conceive to have been intended.

Such transposition would make the sentence read, "more than one-half of the resident owners of property fronting upon the proposed improvement."

Any other construction would lead to the conclusion that the legislature intended streets in Tacoma owned in greater part by non-residents to remain unimproved; a conclusion which is absolutely inadmissible.