MINNESOTA & M. LAND & IMPROVEMENT CO. v. CITY OF BILLINGS et al.

(Circuit Court of Appeals, Ninth Circuit. October 21, 1901.)

No. 605.

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—CONSTITUTIONALITY.
    A city charter which authorizes the council, in making a public improvement, to create an improvement district which shall include only such property as will be benefited by the improvement, and to assess all or a portion of the cost of such improvement upon the property within the district in proportion to the area of the lots, and which also provides for a hearing to be given upon notice to consider objections to the assessment, is not in violation of the constitution of the United States, as depriving owners of their property without due process of law, by requiring the assessment to be made without reference to benefits.

2. SAME—CONSTRUCTION OF CHARTER—CREATION OF IMPROVEMENT DISTRICTS.
    Under the charter of the city of Billings, Mont., as amended in 1893, authorizing the council to "create special improvement districts within the city, designating the same by number, and to change the boundaries of said district from time to time," the city has power to create districts commensurate with the improvement to be made; and, where the improvement will benefit the entire city, it may include the entire city in a single district, to be assessed for the cost of such improvement.

3. SAME—IMPLIED POWERS—EXTENSION OF DRAINS BEYOND CITY LIMITS.
    A city which is authorized by its charter to construct sewers and drains, and to do all other acts which may be necessary for the promotion of health and to prevent the spread of contagious diseases within the city, has power, in constructing a general system of drainage, to extend the same to a proper outlet without the limits of the city.

4. SAME—OBJECTIONS TO SPECIAL ASSESSMENTS—WAIVER.
    Where by the charter of a city the authority to levy assessments for improvements was limited to land which had been subdivided into lots and blocks, and also provided for a hearing at which objections to any improvement or assessment should be heard and considered, a lot owner cannot object to the validity of an assessment on his property because unplatted property was not assessed, when he made no objection on that ground before the assessment was made.

5. STATUTES—AMENDATORY ACTS—VALIDITY AND EFFECT.
    Under the constitution of Montana, and Pol. Code, § 292, relating to the effect of amendments to statutes, an amendatory statute will be upheld, though it purports to amend a statute which had previously been amended, and where it covers the entire subject-matter the previous amendment is repealed by implication, if not in terms.[1]
    Ross, Circuit Judge, dissenting.

---

[1] Amendment of amended, repealed, or invalid statutes, see note to Fence Co. v. Boyce, 44 C. C. A. 590.

Appeal from the Circuit Court of the United States for the District of Montana.

The appellant was the complainant in a bill brought against the appellees to restrain the city of Billings from enforcing a special tax which by an ordinance of the city had been levied and declared a lien against the complainant's property. The bill alleges that the appellant was the owner of a large number of lots within the town site of the city of Billings, and that that city, which is a municipal corporation of the state of Montana, created under and by virtue of an act of the legislative assembly of the territory of Montana entitled "An act to incorporate the city of Billings," approved March 10, 1885 (Laws 1885, p. 147), did, by resolution adopted and passed by its city council and approved by the mayor of said city on July 13, 1893, set apart, create, and establish as an improvement district, designated "Improvement District No. 1," all of the territory embraced within the corporate limits of the city, and that thereafter, by an ordinance adopted and passed by the said city council and approved by the mayor on July 14, 1893, entitled "An ordinance providing for the payment of the expense of improvements in improvement district No. 1, and prescribing the manner of proceeding therein," a tax of $2.70 was assessed upon each and every lot of the area of 25 by 140 feet within said improvement district No. 1, and a proportionate amount upon each fractional part of a lot, which ordinance proceeded to prescribe the manner of assessing, levying, and collecting said tax. The bill sets forth the steps taken to collect and enforce the payment of the tax, and alleges that the appellant's property is about to be sold in such proceedings. It alleges, also, that the tax was illegally and wrongfully assessed and levied upon the appellant's property; that said special tax was levied for the purpose of creating a fund to construct drainage ditches within the said district, and extending beyond the corporate limits of the city; that the construction of said ditches is not authorized by any provision of the charter of said city or any statute applicable thereto; and that the creation of said improvement district was beyond the corporate powers of said municipality. Upon the issues created by the answer, and upon the proofs taken, the court found the equities to be with the appellees, the defendants therein, and dismissed the bill.

E. N. Harwood, for appellant.

John B. Clayberg and M. S. Gunn, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The validity of the proceedings whereby the special tax was levied by the city of Billings is challenged upon several grounds, one of which is that the statute which authorized the same violates the provision of the constitution of the United States which prohibits any state from depriving any person of property without due process of law, for the reason that it permits the exclusion of the consideration of the benefits of the improvement to the property which is to bear the burden thereof. The statute (section 440g) provides that the city council shall enact by ordinance that the expense of such improvements shall be paid by the entire district; each lot therein to pay by special assessment the quotient found by dividing the whole expense by the entire number of lots; the assessment on each lot to be proportioned to its area. But section 428 of chapter 22, as amended by the act of 1893, provides as follows:

"For the purpose of payment of expenses, including all damages and costs incurred in taking of private property, and of making any improvement

mentioned in the preceding sections, the city council may by resolution levy and assess the whole or any part not less than half of such expenses as a tax upon such property as they shall determine is specifically benefited thereby." Laws 1893, p. 130.

The same section makes further provision requiring the publication of the resolution and notice of the time when the city council shall meet to hear objections which may be made to the assessments. The meaning of the statute is that the city council is only authorized to assess and levy the expense of making the improvement as a tax upon such property as they shall determine is specifically benefited thereby, or, in other words, there must be in the creation of an improvement district a determination as to what property would be benefited thereby, and only such property may be included therein. This seems the reasonable construction of these provisions of the statute, but, if the provisions of section 440g are to be taken as standing alone and unaffected by any other section, they still do not create an assessment which is void, or which takes the property of the taxpayer without due process of law; nor is Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, authority to the contrary. That case involved the validity of a village ordinance which imposed upon the abutting property the entire cost of opening a street through the premises of a single property owner, whose land was condemned for the street. There had been no legislative determination as to what lands were benefited, no inquiry concerning the benefits by the village council, and no opportunity to the abutting owner to be heard on that subject. The court held that the exaction from the owner of the entire cost of the public improvement, in substantial excess of the special benefits accruing to him, was, to the extent of such excess, a taking of private property for public use without compensation. The limits of the doctrine of that case have been defined by the supreme court in the recent decision of French v. Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 926,—a case which involved an assessment substantially identical with that which is under consideration in the case at bar. It was a case where the cost of a pavement was apportioned, as against the lots fronting thereon, under a charter which required that the total cost of the work should be apportioned as a charge against the abutting lots according to their frontage on the improvement, without reference to any benefits which might accrue to the property upon which the charge was made. It was contended, under the authority of Village of Norwood v. Baker, that such assessment was void; but the court held otherwise, quoting with approval Dill. Mun. Corp. § 752, as follows:

"* * * Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency."

The decision in French v. Paving Co. clearly determines the present question adversely to the appellant's contention.

The appellant denies the authority of the city to include the whole city in a single improvement district. The statute under which the improvement was made and the tax was levied, as amended by section 1 of the act of 1893, authorizes the city council "to create special improvement districts within the city, designating the same by number, and to change the boundaries of said districts from time to time as the city council may deem expedient." Laws 1893, p. 121. This provision should be construed with reference to the object which was intended to be accomplished. It is contended by the appellant that because the word "districts" is used in the plural, and authority is given to create special improvement districts "within the city," and to designate the same by number, the statute can only be complied with by creating at least two districts, and that the inclusion of the whole city in a single district is absolutely without authority of law. We think the statute should not be thus narrowed in its construction. It was intended to confer the broad power of creating special improvement districts, commensurate with the improvement which was required to be made therein. The word "special" qualifies the improvement, not the district. The improvement in this instance affected the whole city. If it had affected but three-fourths of the city, it is not disputed that all the area so affected might have been included in an improvement district. It is but to pursue the same course of reasoning to reach the conclusion that by leaving out one block all the remainder of the city might be included in one improvement district. The statute undoubtedly was intended to authorize the city council to make whatever special improvement, within the scope of enumerated powers, might be deemed necessary for the welfare of the city, or any part thereof. It was to be a continuous power, to be exercised as occasion might arise, and to be adequate to the necessities of the case,—a power to include the whole city in one district, if necessary for an improvement which affected the whole, or to divide the city into smaller districts for other special improvements which might affect only the particular portions so included. But if, indeed, it were doubtful whether the statute so quoted authorized the inclusion of the whole city in one improvement district, all doubt would seem to be removed by section 440g, which was added to chapter 22 of the Compiled Statutes of Montana by the act of 1893, and which provides that:

"Whenever it is desired to create special improvement districts for the purpose of grading, paving, macadamizing, or otherwise improving any street, avenue, or alley, or any part thereof, or building, repairing, or improving any sewer, sidewalk, or gutter; or making any other public improvements, including street sprinkling and planting of trees * * * the city council shall by resolution designate the boundaries of such district which may be composed of all or any part of any block or blocks within said city."

So, also, under subdivision 47 of section 325 of the act, the power is given to the city council to establish at a suitable point without the limits of the city, in case of necessity, a hospital, to prevent the

spread of smallpox or other contagious or infectious diseases, "and do all other acts which may be necessary for the promotion of health and to prevent the spread of contagious diseases within the city"; and in subdivision 56 the power is given "to lay off the city in suitable districts for the purpose of establishing a system of sewerage and drainage." Section 440h makes provision for giving notice by publication of the proposed creation of a special improvement district, and the boundaries thereof, and furnishes opportunity to any person owning any real estate within such district to appear before the city council and show cause why the proposed improvement should not be ordered, and why the special improvement district should not be established. All of these requisites of the statute were complied with in the present case. The appellant made no objection to the creation of the improvement district or to the proposed improvement. Its first protest was recorded after the improvement had been completed, and proceedings had been instituted to compel the payment of the assessment.

Nor is any reason perceived why a portion of the improvement should not have been made on lands without the city. The scheme was to drain the city, and thereby to benefit the property thereof and to protect the health of its inhabitants. To accomplish this, it was necessary to extend the drainage beyond the city limits, in order to obtain a proper outlet. A city council undoubtedly has the power, if it be granted the authority to make such improvement, to make it efficacious, by extending it as far as necessary beyond the corporate limits. Dill. Mun. Corp. (4th Ed.) § 446; City of Coldwater v. Tucker, 36 Mich. 474, 24 Am. Rep. 601.

It is further contended that the enforcement of the tax should be enjoined for the reason that no assessment was levied against a large portion of the land which lies within the improvement district, and that there was omitted therefrom land equal in area to about 2,400 lots. The authority to levy the assessment is by statute confined to land which has been subdivided into lots and blocks. The record shows that the property omitted from the assessment consisted almost entirely of public property of the city, the rights of way of railroads, and other land which had not been platted, of which latter the appellant itself was the owner of an area equal to 261 lots. The record does not convince us that property within the district was excluded from the assessment which ought to have borne its proportion of the burden of the improvement, but, if it were, the time to object to its omission was prescribed by section 440o. The objection which is interposed by the present suit comes too late.

The appellant contends that the city of Billings never acquired the right to avail itself of the authority to create special improvement districts, or to order the improvement which was made in this case; for the reason that it was never reincorporated under the provisions of chapter 22, div. 5, Comp. St. Mont., and the amendment thereto. The city had been incorporated under the act of March 10, 1885, entitled "An act to incorporate the city of Billings." Laws 1885, p. 147. Under that charter it had no express

authority to make the improvement, or to levy the special tax which is here complained of. On March 10, 1887, a general statute was enacted, entitled "An act relating to the formation of municipal corporations," which became chapter 22 of the Compiled Statutes of Montana, and consisted of sections numbered 1 to 126, inclusive. Section 78 of that act authorized any city or town which had been incorporated by special charter to abandon its organization, and reorganize under the provisions of the act, by pursuing the course therein prescribed. Section 79 prescribed the course, and provided that the proceedings should be initiated upon the petition of 200 citizens, residents, freeholders, and qualified electors, and contained the provision that "all the requirements of this act as to notice of the election, the appointment of judges and clerks thereof, the returns of the election and the canvassing of the votes given, shall be complied with." At an extra session of the legislature convened in August, 1887, section 79 was amended. The amended section was set forth in full, and the amendment consisted in omitting from the section the requirement that the petitioners be freeholders. In other respects it remained as it was before the amendment. The next legislation on this subject was in 1889, by an act entitled "An act to amend chapter XXII., fifth division, of the Compiled Statutes of Montana, relating to municipal corporations, and the amendments thereto, approved September 14, 1887." Laws 1889, p. 178. Section 79, as originally embodied in chapter 22, was so amended as to provide as follows:

"The common council or board of aldermen may at any time order an election to be held at which the question of reincorporation under this act shall be decided. If a majority of the qualified voters, as defined by this act, shall vote in favor of reincorporation of the city or town, under the provisions of this act, they shall thereupon be incorporated hereunder in all respects and subject to all the provisions of this act as if originally incorporated hereunder, all the requirements of this act as to notice of the election, the appointment of judges and clerks thereof, the returns of the election, and canvassing the votes given, shall be complied with."

The appellant directs attention to the fact that the act of 1889 expressly repeals certain sections of the previous statutes relating to municipal corporations, but does not expressly repeal the amendment of the extra session of 1887, nor does it contain any general repealing clause, and contends that the amendment of 1887, not being in direct terms amended or repealed, remains in force, and that the city of Billings could not become reincorporated upon a proceeding instituted by the common council, but could only do so upon the petition of 200 citizens, residents and qualified electors, and in the manner prescribed by the amendment of 1887. We do not so construe the act. We think there can be no question that the act of 1889 expresses the legislative will upon the whole subject of the preceding legislation. Section 292 of the Political Code of Montana provides:

"Where a section or a part of a statute is amended it is not to be considered as having been repealed and reenacted in the amended form; but the portions which are not altered are to be considered as having been the law from the time when they were enacted, and the new provisions are to be considered as having been enacted at the time of the amendment."

111 F.—62

The statute but expresses the rule that would obtain in its absence,—that an amendatory statute will be upheld, though it purport to amend a statute which has already been amended. Com. v. Kenneson, 143 Mass. 418, 9 N. E. 761; Wire Co. v. Boyce, 44 C. C. A. 588, 104 Fed. 172; Heinze v. Mining Co., 46 C. C. A. 219, 107 Fed. 165. From and after the adoption of the amendment of 1889, the whole of the existing law concerning the method of reincorporating municipal corporations is embodied in the section thus amended. The method thereby prescribed was substantially followed in the case of the city of Billings. Its right, therefore, to avail itself of the powers conferred upon such reincorporated cities, cannot be assailed. We have discussed the question as if it were one that the appellant is entitled to raise in the present suit. The decisions, however, seem to be unanimous that the question can only be raised by the state itself upon quo warranto or other direct proceedings, and that the existence of the corporation, or its reincorporation under a new statute, cannot be questioned collaterally. Cooley, Const. Lim. (5th Ed.) p. 311; Mullikin v. City of Bloomington, 72 Ind. 161; Speer v. Board, 32 C. C. A. 101, 88 Fed. 749; Troutman v. McCleskey (Tex. Civ. App.) 27 S. W. 173; State v. Town of Dover, 41 Atl. 98.

We find no error in the decree of the circuit court. The decree will be affirmed

ROSS, Circuit Judge, dissents.