PORTSMOUTH SAVINGS BANK ET AL., APPELLANTS, V. CITY OF OMAHA ET AL., APPELLEES.

FILED JANUARY 8, 1903.   No. 12,309.

Commissioner's opinion, Department No. 1.

1. Repaving Streets: PETITION: FOOT-FRONTAGE. A petition, in substantial compliance with the requirements of law, by the owners of a major part of the foot-frontage of lots abutting upon a street, which is proposed to be repaved, is a necessary prerequisite to any jurisdiction on the part of a city council to specially assess the abutting property to pay for such improvements.

2. Authorized Signature of Wife by Husband Tantamount to Signature by Wife. The signature of a wife's name to such petition, executed by her husband with her authority, and in view and hearing from the place where she was at the time, is equivalent to a signature by herself.

3. Signatures by Executors and Trustees. The signatures by executors and trustees of an estate to whom jointly it is devised "to be held and managed by them" during the lifetime of the testator's wife, with "full discretion in the management and control of said property with the view of increasing its value and deriving the best possible income therefrom," are the signatures of the "owners," in the meaning of the statute.

4. Notice to Property Owners. A notice to the property owners to select material for such paving, published for the required time and in the required manner, substantially in accordance with the requirements both of the statute and of the city ordinance, is not bad because not directed to the owners by name.

5. ———: STATUTE: JURISDICTION. The provision that whenever any repaving shall be declared necessary by the mayor and city council, and an improvement district created, notice to the property owners should be given to designate within thirty days the paving material to be used, does not make it jurisdictional that such declaration affirmatively appear of record in the council's proceedings, since other parts of the statute make such action mandatory when proper petitions are filed.

6. Publication: SUNDAY: CONTINUOUS PUBLICATION. That one of the

Syllabus by court; catch-words by editor.

days of publication is Sunday, is no objection to the sufficiency of the publication of notices for an equalization board meeting to be held on September 13, whose notices were published each day from the 6th to the 12th, inclusive.

7. **City Board of Equalization: JUDICIAL ACT: COLLATERAL ATTACK.** A city board of equalization, when regularly in session, with due notices published of matters to come before it, acts judicially upon matters within its jurisdiction, and such action is not open to collateral attack.

8. **Finding: INJUNCTION.** A finding that the property is benefited "to the full amount in each case of said proposed levies" is not so defective, in not finding the property assessed to be benefited proportionately to its frontage, as to warrant an injunction against collecting a tax levied on that basis.

9. **Error: BRIEF: ORAL ARGUMENT: WAIVER.** Matters not argued in the brief of counsel, nor urged in oral argument, are deemed waived.

APPEAL from the district court for Douglas county, from a decree dismissing a petition for injunction to prevent the collection of a special assessment. Heard below before ESTELLE, J. *Affirmed.*

*Richard S. Horton* and *Franklin J. Griffen,* for appellants.

*James H. Adams* and *Charles E. Morgan, contra.*

HASTINGS, C.

This is an appeal from a decree dismissing a petition for injunction. The plaintiffs in this action, Portsmouth Savings Bank, Omaha Brewing Association, Frank D. Brown, Clementine Brown, Herman Kountze, and Calvin H. Frederick, unite in asking an injunction against the city of Omaha and August H. Hennings, its treasurer, to prevent the collection of a special assessment of $2,927.43 for the repaving of a portion of Sherman avenue embraced in the city improvement district No. 614, so far as such assessment affected the premises of the plaintiffs.

It is complained in the first place that the petition for repaving was defective in not being signed by the owners of the majority of the foot-frontage on the street to be re-

paved. This contention rests upon the claim that W. S. Poppleton and Caroline Poppleton, who signed, representing 264 feet of the frontage, are not the owners of the property, being only executors and trustees, and that the signature of Mrs. S. J. Bryant was written by her husband, and not in her actual presence, and is not such signature as the statute requires, and that the owners of the majority of the frontage along the proposed improvement never signed the petition.

It is also complained because the notice to the owners, requiring them to select material for the paving within thirty days, was a general notice, not directed by name to any of the owners of real estate in the district.

It is complained further that the mayor and council never declared the repaving to be necessary.

It is complained that the petition, purporting to be signed by the owners of the property involved, that asphaltum be used for the entire repaving, was not signed by a majority of the owners, and that the ordinance, and its approval, providing for pavement with such material, was not authorized; that notice of the meetings of the council as a board of equalization for making the special assessment was insufficient because published in the Omaha daily papers from the 6th to the 12th of September, inclusive, while the meeting was held on the 13th; and because no names of any owners were in this notice; that no findings were made of any special benefits to the real estate in question, and the assessment was therefore unauthorized; and that the assessment was by taxing the costs of the proposed paving according to frontage against the property involved.

Complaint is also made because the repaving contract included a guarantee to keep the pavement in repair for five years, at an additional cost, in accordance with a provision of the city charter, which is claimed to be unconstitutional.

The answer on the part of the city, after admitting that the property described is situated in the improvement

district, that the ordinance set out in plaintiffs' petition was passed and that the city claimed a lien for special assessments as stated, denies the remaining allegations of the petition; alleges that all of the proceedings were taken with full knowledge on the part of the plaintiffs; admits that they are owners of the property claimed by them, and says that they are estopped from questioning the tax proceedings by having kept silent so far; that the brewery association is especially estopped because it became the owner of its property in the improvement district after the assessment was levied, and under a conveyance by whose terms it was to pay such assessments; admits the filing of the repaving petition, but alleges that the signatures were regular and sufficient; that no objection or exception was made, either to them or to the equalization of the assessment, and that neither can now be questioned in collateral proceedings; that plaintiffs should have saved their rights, if they had any by reason of irregularity in such assessment, by appeal or review in error.

It will be observed that the principal complaints against these special tax proceedings are that the original petition was not signed by the owners of a major part of the frontage; that the notice to select material was not directed to any owners by name; that the council made no declaration of necessity of repaving; that the notice of equalization and assessment proceedings was insufficient, and the equalization not complete, because there was no finding that benefits are proportional to the frontage of the several properties.

The first answer of the city is that these special tax proceedings can not be collaterally attacked. This claim it is sought to support by citations of cases relating to political rights from our own and other states. It can hardly be maintained as to ex-parte proceedings whose object is the subjecting of private property to public use. The general doctrine on this subject seems still to be that cited in Cooley, Taxation (1st ed.), p. 464: "The statute authority must be strictly pursued. This rule is

fundamental and imperative. Not that it must be literally followed, but the observance of every one of its substantial requirements must be regarded as a condition precedent to the validity of any assessment." It is a rule, as indicated in *Kahn v. Supervisors,* 79 Cal., 389, 21 Pac. Rep., 849, that where the statutes provide for a notice of the filing of such a petition, and a hearing as to its sufficiency, the determination reached at such a hearing is of the nature of a judgment and can not be assailed collaterally; but where, as in this state, the petition and hearing are entirely exparte, without notice to the owners of the property, such conclusiveness can hardly be attributed to it. The almost universal holding is that to render a determination *res judicata,* some kind of a notice to the parties directly interested must be provided. There seems no reason for changing the uniform holding of this court that a petition in substantial compliance with the statute is a jurisdictional prerequisite to a valid assessment of paving taxes. *Von Steen v. City of Beatrice,* 36 Nebr., 421; *Harmon v. City of Omaha,* 53 Nebr., 164; *State v. Birkhauser,* 37 Nebr., 521, 529; *Fullerton v. School District,* 41 Nebr., 593, 601; *Leavitt v. Bell,* 55 Nebr., 57, 58. It must be examined, then, as to whether or not the petition in this case complied with the statutory requirements and was signed by the owners of a major part of the foot-frontage on the proposed improvement.

With regard to the signature of Mrs. Bryant, the district court found that she was the owner of lots 3, 4 and 5 in block 12 in Kountze's place; that her name was signed to the petition by her husband, D. C. Bryant, and said signature was made by her consent, and was in law and in fact the signature of the owner of said property, as required by law; and that said property is regularly signed for upon said petition by its owner. There is evidence in the record to support these findings, and Mrs. Bryant says the signature to the petition was made by her husband while she was in an adjoining room; but she says it was with her consent, and in full view from the place where she was.

The question arising as to the signatures on behalf of the Poppleton estate presents more difficulty. The finding of the district court was: "The court further finds that lots 9 to 12, inclusive, in block 5 and lot 13 in block 6, in Sulphur Springs addition, signed for by William S. Poppleton and Caroline L. Poppleton, executors and trustees of the estate of Andrew J. Poppleton, are signed for in contemplation of the law by the owners of the said property and that the said signatures are valid and sufficient signatures of the owners of the same. The court further finds that the said property was the property of Andrew J. Poppleton prior to his death and that by the terms of the will of Andrew J. Poppleton, deceased, the title to said property passed to William S. Poppleton and Caroline L. Poppleton as executors and trustees of the estate of Andrew J. Poppleton, deceased, and by the terms of the said will said executors and trustees were specifically authorized to do any act in relation to said property for the improvement of the same, and the court finds that the repaving in improvement district No. 614 was such an improvement to said property as would come within the terms and provisions of said will and within the powers conferred upon the executors and trustees thereunder. The court finds that Caroline L. Poppleton had a life estate in the property" and that the signatures of herself and William S. Poppleton were lawful and valid signatures of the owners of the property. It is conceded that these premises were, in his lifetime, the property of Andrew J. Poppleton. At his death, by the seventh and eighth clauses of his will, this property was devised "to my wife, Caroline L., and my son, William S. Poppleton, jointly, in trust, to be held and managed by them during the life of my wife as follows: So much of the gross income from said property as may be necessary to pay the taxes and insurance thereon, and to meet all charges for keeping it in good condition without waste or deterioration, shall be applied for that purpose; the income in excess of that required for the payment of taxes and

necessary expenses shall be divided among my wife, Caroline L., and my three children, William S. and Elizabeth E. Poppleton and Mary L. Learned (formerly Poppleton) in the following manner to wit: My said wife is to receive the first seven hundred and fifty ($750.00) dollars per month of such net income, to be paid to her in as nearly monthly payments as practicable.    The net income remaining after the payment to my wife of said sum of seven hundred and fifty ($750.00) dollars per month, shall be divided among my wife and my aforesaid three children in equal proportions, that is, one-fourth to each, the distributees and legatees of any deceased child to take the same share as such deceased child would have taken if living.    In case the net income from said property after the payment of taxes and expenses should not exceed the sum of seven hundred and fifty ($750.00) dollars per month, then the whole amount thereof shall be paid to my wife.    It is my will in this regard that said trustees shall have full discretion in the management and control of said property, with the view of increasing its value and deriving the best possible income therefrom.    Eighth.    Upon the death of my wife, the trust above created shall cease and determine, and all the property so held in trust shall be divided among my three children, William S. and Elizabeth E. Poppleton and Mary D. Learned, in fee-simple title, share and share alike.    In case my son, William S. Poppleton, should die before my wife, all the powers vested in the two shall devolve upon my wife, and she shall continue to act as sole trustee in the manner above stated."

It is claimed that the conferring upon these trustees of "full discretion in the management and control of said property, with the view of increasing its value and deriving the best possible income therefrom," is a sufficient authority for their signing the petition in question, and that the district court was right in so holding.

In *Allen v. City of Portland*, 58 Pac. Rep. [Ore.], 509, 516, it was held that the widow, who possessed the life interest and had the management and control of real estate,

was the owner, and authorized to sign as such, under a similar statute; citing *Garland v. Garland*, 73 Me., 97; *Willard v. Blount*, 33 N. Car. [11 Ired. Law], 624. The authority and control in this Oregon case were derived solely from the life estate left to the widow. The Poppleton will gave the trustees full discretion in the management and control of said property, with the view of increasing its value and deriving the best possible income therefrom. The cases cited in this Oregon decision are merely examples of the well-known general rule that the payment of taxes is the duty of the party in receipt of the income from land. They have no particular relation to the question as to who is authorized to petition for improvements. Some Arkansas cases, and *Rakes v. Brown*, 34 Nebr., 304, are cited to the proposition that executors and administrators are not owners in such a sense as to enable them to petition for improvements. *Rakes v. Brown* is simply a holding that real estate descends to the heirs, and that they are the proper plaintiffs in whose name an action to recover real estate should be revived. *Rector v. Board*, 50 Ark., 116, is quoted to the same proposition, and *In re Higgins*, 15 Mont., 474, 39 Pac. Rep., 506, is cited to the proposition that where executors are also trustees, the latter function does not attach until distribution is ordered. In the present case, however, it does not seem important whether or not the trustees had entered upon their duties and were in charge as trustees of the property for which they signed the petition. Their control as executors would be temporary, and their rights under the will had accrued by their due qualification as executors. The right to petition for the improvement of these premises certainly remained in some one; appellants say, in the heirs of A. J. Poppleton. So long as the entire control of these premises and of their income remained, by the terms of the will, vested in the trustees, it would hardly seem that such power was in the heirs. If not, it was certainly in the trustees. We are not disposed to disturb the finding of the district court in this respect.

The objections to the notice to select material seem to be disposed of by the case of *Medland v. Linton,* 60 Nebr., 249. We do not find that the charter of the city requires any special form of notice, but simply provides that property owners shall be given thirty days' notice, which by ordinance the board of public works are directed to publish, requiring the property owners within the improvement district to notify the city council of their selection of material for paving within the thirty days provided for. The notice in this case seems to comply with the terms of the ordinance and will be deemed sufficient.

As to the requirement of a declaration that the work is necessary, an examination of section 110* of the city charter would seem to indicate that it never was intended by the legislature that this declaration should be jurisdictional. The section is as follows: "The mayor and city council may order such improvement except repaving, by ordinance and cause it to be made, when it is embraced in any district the outer boundaries of which shall not exceed a distance of three thousand feet from any of the streets surrounding the court house grounds of the county within which such city is located. The mayor and city council may order such improvement, except repaving, and cause it to be made upon any street or alley within any district in the city, but if a protest signed by persons representing a majority of the taxable feet fronting on any street or alley ordered to be so improved in the improvement district shall have been filed with the city clerk within thirty days after the approval and publication of the ordinance ordering such work, then such improvement shall not be authorized. The mayor and city council shall order such improvement and cause it to be made in any district within the city, when a petition signed by persons representing a majority of the taxable feet front upon such street or alley shall have been filed with the clerk. No repaving shall be ordered except upon the petition of the owners of a majority of the taxable front feet in any im-

* Compiled Statutes, ch. 12a.

provement district. * * * Whenever any of the improve-
ments herein named, to wit, paving, repaving, macadamiz-
ing, curbing or guttering, singly or all together, shall be de-
clared necessary by the mayor and city council and an
improvement district shall have been created, then it shall
be the duty of the mayor and council to give the property
owners within such district thirty days from the date of
approval and publication of the ordinance declaring such
improvement necessary, to designate by petition the ma-
terial to be used in the paving of the streets or alley or
other grounds within said district."

This statute refers in the first instance to original pav-
ing within 3,000 feet of the court house; the second pro-
vision is relative to original paving outside that limit; and
the third provision is that the mayor and city council shall
order the work on a petition signed by persons represent-
ing the majority of the taxable front feet. It would seem
that the ordering of the improvement is mandatory on the
filing of the petition. The declaration of the necessity is
not made in terms jurisdictional, and is a part of the later
proceedings. It seems a quite different provision from
that, for instance, of the drainage act, by which the com-
missioners are required to make a finding as to the neces-
sity of the work, and that the proposed route is the best
one, and file it of record, before proceeding further. A
large number of cases are cited by counsel for appellants
from different states, in which the statute requires that the
council shall declare by resolution on their records the
necessity of the proposed work. The distinction between
such statutes and the one in question here, seems plain.
A declaration, in fact, such as may be presumed, satisfies
this statute. One of record is required in the other cases.
We prefer in this matter to follow the authority of the
supreme court of Massachusetts in *Commonwealth v.
Abbott*, 35 N. E. Rep. [Mass.], 782. See 2 Dillon, Muni-
cipal Corporations [4th ed.], sec. 770.

With regard to the complaint as to equalization notices,
they were published on September 6 to 12, inclusive, and

the meeting was held on the 13th. The statute requires notice to be published for at least six days. It is objected that one of these days was Sunday, and should not be counted. We are of the opinion that this objection is not well taken, and that the publication was for at least six days before the meeting. It has been held that the six days mentioned are the six days immediately before the meeting. *Leavitt v. Bell,* 55 Nebr., 57, 65. Unless the meeting was on Sunday, this would necessitate a publication on Sunday. The publication in this case seems sufficient.

A harder question is the effect to be given to the notices, and to the action of the equalization board taken pursuant to them. It has been often enough decided by this court that the statutes conferring powers upon boards of equalization are to be strictly construed. *Grant v. Bartholomew,* 58 Nebr., 839; *Merrill v. Shields,* 57 Nebr., 78; *Wakeley v. City of Omaha,* 58 Nebr., 245; *Medland v. Connell,* 57 Nebr., 10. It has been held that the board of equalization has no authority to assess special taxes, until it has first determined the amount to be assessed for special benefits. *Equitable Trust Co. v. O'Brien,* 55 Nebr., 735; *Medland v. Connell,* 57 Nebr., 10, 14; *Smith v. City of Omaha,* 49 Nebr., 883. In all of the above cases, however, the decision seems to turn upon the regularity and sufficiency of the notice of the meeting. It does not seem to be held anywhere that the proceedings of any board of equalization are absolutely void for informality in the findings as to special benefits. In the present case the finding made by the board of equalization recites, after stating that all complaints have been examined, that the board "have full and personal knowledge of the character of said improvements, respectively, and special benefits to the lots and real estate respectively, by reason thereof," and that due notice of the meeting had been given; therefore, "Resolved, that it is the final determination of the city council sitting as a board of equalization that levies of special taxes to cover the cost of the several improvements referred to in said notice and as shown by the plans

of proposed levies prepared by the city engineer and on file in the office of the city clerk, should be made in accordance with said plans, the several lots and pieces of lots and real estate therein described being specially benefited to the full amount in each case of said proposed levies." This seems to us a sufficient, if somewhat informal, finding that the benefits are proportional to the frontage. If the benefits are in each case equal to the amount levied, then they must be proportional to the frontage, for the levies are made on that basis. To be sure, the finding does not say, in terms, that the benefits are in no case more than this amount levied, but it would not seem that any presumption of such a fact should be indulged. Moreover, these proceedings were not ex-parte. They were held on the regular quarterly date of such meetings, and after notice to property owners as to just what property was involved, and what was proposed to be levied. They were held, too, under a statute which provides, "and all such assessments and findings of benefits shall not be subject to review in any legal or equitable action, except for fraud, gross injustice or mistake." Compiled Statutes, ch. 12a, sec. 161.*  Section 164† of the same chapter of the Compiled Statutes provides: "No court shall entertain any complaint that the party was authorized to make, and did not make to the city council sitting as a board of equalization." The proceedings of the board of equalization are subject to review on error. *Sioux City & P. R. Co. v. Washington County,* 3 Nebr., 30, 41; *Webster v. City of Lincoln,* 50 Nebr., 1. If the finding as to benefits was informal, it could have been corrected either at the time or on review. So long as such is the case, this defect can hardly be ground for an injunction. It is true that in *John v. Connell,* 64 Nebr., 233, this court sanctioned the proposition that a finding that benefits were equal and uniform was jurisdictional. In that case, however, the main objection was want of any legal session of the board, and, of course, there was not

---

* Cobbey's Annotated Statutes, sec. 7629.

† Cobbey's Annotated Statutes, sec. 7633.

only no finding, but no possibility of one. The statutes above mentioned were not examined, but we do not think there is anything in that case, necessarily, in conflict with the proposition that the equalization board, when properly in session, with due notice given, acts judicially, and its action within its jurisdiction is not open to collateral attack. Such seems to be the plain import of the statutes above cited. In *French v. Barber Asphalt Co.*, 181 U. S., 324, a statute authorizing the levy of special taxes for improvements directly upon the property, according to frontage, without a finding of benefits, is held to be not prohibited by anything in the federal constitution. No ground for objecting to the constitutionality of our statutes as to the conclusiveness of the action of the board of equalization has been pointed out to us or is perceived.

No reason for holding that inclusion of a guarantee to maintain the pavement for five years in the cost of construction vitiates the proceedings, has been given, and that point must be deemed waived.

It is recommended that the judgment of the district court be affirmed.

KIRKPATRICK and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.