## TOWN OF KETCHIKAN v. ZIMMERMAN.

(First Division. Juneau. February 16, 1911.)

No. 136KA.

1. MUNICIPAL CORPORATIONS (§ 277*)—PUBLIC IMPROVEMENTS—AUTHORITY.

On the seaward side the boundary line of the incorporated town of Ketchikan, Alaska, is the line of high tide. To connect two important parts of the town which are separated by a high rocky bluff point rising almost perpendicular from the water front, the town passed an ordinance authorizing the construction of Water street along that boundary line, and assessed one-half the cost thereof against the abutting property. In constructing the street along the high tide boundary in front of the rocky wall, the conditions were such that the whole of the street in some places and portions thereof in others were constructed beyond the line of high tide and outside the town limits. On suit to recover his assessment, the defendant answered, alleging these facts, and denied the validity of the assessment. *Held*, the town had authority to construct the street under the peculiar circumstances of the case.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 732; Dec. Dig. § 277.*]

2. MUNICIPAL CORPORATIONS (§ 277*)—IMPROVEMENTS—EXTRATERRITORIAL JURISDICTION.

Although a municipality has usually no authority outside of its own limits, yet authority to act beyond its boundaries is sometimes implied on grounds of special necessity. A city may

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

acquire land beyond its limits for obtaining an outlet for its sewerage system or contract for the disposition of its discharge or agree to maintain a ditch. It may improve a road leading to a gravel bank which belongs to the corporation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 732; Dec. Dig. § 277.*] .

3. MUNICIPAL CORPORATIONS (§§ 488, 489*)—PETITION FOR PUBLIC IMPROVEMENT—ESTOPPEL.

Where the owner of abutting property signs a petition to the town council requesting the exercise of its jurisdiction in constructing a street by special assessment to be charged to the abutting property, he is estopped from questioning any irregularities in the acts of the council, but he is not estopped from raising the jurisdictional question that the council proceeded without securing a petition signed by the number of property owners required by law. His name to the petition indicates that he is willing to be bound, providing the law is followed and a majority of the owners in value sign the same petition.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1147–1152; Dec. Dig. §§ 488, 489.*]

4. MUNICIPAL CORPORATIONS (§ 568*)—SPECIAL ASSESSMENTS—BURDEN OF PROOF—PRESUMPTIONS.

Where the town council is petitioned to construct a street at the expense of the abutting property owners, and does so, and one of the signers refuses to pay his assessment upon the allegation that the council acted upon a petition signed by less than the number of petitioners required by law, the burden of proof is upon him to establish the fact, and the court will presume that the petition was signed by the number required by law, until the contrary is established by the evidence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1282; Dec. Dig. § 568.*]

This is an action in which the plaintiff, a municipal corporation, seeks to foreclose a lien on the defendant's property for nonpayment of an assessment levied for the cost of the construction of a street upon which the said property of the defendant abuts.

The complainant alleges, among other things, that the plaintiff is a municipal corporation, and that, pursuant to a petition signed by the owners of more than two-thirds in value of the property abutting on Water street, the said plaintiff corporation passed an ordinance providing for the widening of Wa-

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

4 A.R.—22

ter street from its original width to a width of 25 feet and for the assessment of one-half of the cost thereof against the abutting property; that thereafter the plaintiff corporation did widen and construct a street from a point at the westerly extremity of Grant street to a point in front of the store of J. W. Young & Son. Plaintiff further alleges that all of said street so repaired, widened, and constructed is within the corporate limits of the plaintiff corporation, and that the amount due from defendant, who is an abutting owner, to plaintiff on account of such improvement of said street is $91.10, all of which sum the defendant refuses to pay.

The defendant, answering the plaintiff's complaint, admits the incorporation of the plaintiff corporation, admits also the construction of Water street on part of the plaintiff, admits ownership of the property described in the complaint, and that it abuts on Water street, but alleges that said street is without the corporate limits of the town of Ketchikan, and for that reason the actions of the common council in providing for the construction and actually constructing said street are ultra vires and void.

The evidence in the case discloses substantially the following situation: The town of Ketchikan is situate on Revillagigedo Island, on Tongass Narrows, in the district of Alaska. The earliest settlement in the vicinity of Ketchikan was made where what is now known as old town is situate. The available space for town-site purposes in that particular vicinity being very limited, as the population of the village increased, residents began to build homes in what is now known as new town, and now, after the lapse of several years, many citizens of Ketchikan have erected homes, and a few business establishments have been located in that vicinity. A high and almost precipitous rocky bluff extends to the shores of Tongass Narrows between old town and new town, which renders access between the two portions of the town practically impossible, except by water or by Water street. Prior to the construction and widening of Water street, as alleged in the complaint, the citizens had constructed a narrow sidewalk along the sinuosities of the coast between the two portions of the

town, but, as the town gradually grew to its present proportions, it was discovered by the citizens and the common council that the means of access from one portion of the town to the other were too limited, and evidently for that reason the residents of new town petitioned the common council to widen Water street from a point at the junction of Grant and Front streets along the coast of Tongass Narrows in a northwesterly direction. Water street, from its commencement at Grant street northwesterly to a point beyond the defendant's property, is partially on upland and partially on the shore land of Tongass Narrows. The evidence shows, however, that for practically the entire distance a portion at least of the street is above the medium high tide line, the remaining portion of Water street, to wit, the portion which runs northwesterly from the defendant's property to Young's store is almost entirely, if not entirely, on the tideland of Tongass Narrows.

The evidence further shows, however, that while Water street has not been improved or widened beyond Young's store, under and by virtue of the ordinance referred to in the complaint, yet, as a matter of fact, it does continue beyond Young's store, and again crosses onto the upland and within the corporate limits of the plaintiff corporation. The westerly boundary line of the plaintiff corporation conforms to the medium high tide line of Tongass Narrows.

It is apparent, therefore, that a portion of Water street, to wit, that portion commencing at Grant street and extending northwesterly and beyond the defendant's property, is partially on upland and partially on tideland, partially within and partially without the corporate limits of the plaintiff corporation. It further appears that the remaining portion of said street, as far as Young's store, is on tideland and without the corporate limits of the town of Ketchikan, but that, while the street has not been, in the proceeding complained of by the defendant, constructed beyond Young's store, yet in truth and in fact the street does actually extend beyond Young's store across the tideland up to and over the upland within the corporate limits of the town of Ketchikan.

It appears further that Water street connects two portions

of the town of Ketchikan, and the evidence shows that the topography of the ground between old town and new town is such as to preclude the construction of a street between the two points which would be entirely within the corporate limits of the town of Ketchikan without the incurring of enormous expense either for tunneling or excavating.

Cosgrove & Ingersoll, for plaintiff.

John W. Arctander, of Seattle, Wash., for defendant.

LYONS, District Judge. The defendant contends, first, that the common council of the town of Ketchikan was without the power to construct Water street for the reason that at least a portion of the same is without the corporate limits of Ketchikan; and, second, that, even if the common council had such power, its exercise of the same was void because the petition upon which the common council acted was not signed by the owners of two-thirds in value of the property abutting upon Water street.

The first contention by the defendant is the more serious, because it questions the power of the common council under the law to perform acts which are obviously for the benefit and welfare of the people of the town. The second contention is not so serious, for it only goes to the alleged failure on the part of the common council to follow the proper legal steps necessary to render the abutting owners liable for their pro rata share of the expense of repairing or constructing such street.

The powers of the common council, with reference to the construction of streets both within and without the corporate limits, are defined in the fourth and fifth paragraphs, of section 4 of an act of Congress, entitled "An act to amend and codify the laws relating to municipal corporations in the district of Alaska" (Act April 28, 1904, c. 1778, 33 Stat. pt. 1, p. 531), which paragraphs provide as follows:

"Fourth. That the common council shall have and exercise the power to provide for the location, construction and maintenance of the necessary streets, alleys, crossings, sidewalks, sewers, and wharves. If such street, alley, sidewalk, or sewer, or parts thereof, is located and constructed upon the petition of the owners of two-

thirds in value of the property abutting upon and affected by such improvement, then two-thirds of the cost of the same may, in the discretion of the council, be collected by the assessment and levy of a tax against the abutting property, and such tax shall be a lien upon the same and may be collected as other real estate taxes are collected.

"Fifth. To provide for the location and construction for a limited distance and to a limited extent of trails and wagon roads outside the limits of the towns but leading to and from the same, where such roads and trails are necessary for promoting the welfare and prosperity of the town; but no money shall be expended for such purpose except upon the unanimous vote of the entire council unless the qualified voters of the town have at an annual election by ballot by a two-thirds vote voted in favor of such expenditure."

It is admitted that Water street was not widened or constructed under and by virtue of the provisions of the last preceding paragraph; consequently the express provision of the statute which authorizes the common council to build roads or construct streets without the corporate limits was not followed in this case, as the ordinance authorizing the construction of the street was passed when only six councilmen were present, and it is not contended that the qualified voters of the town at any preceding annual election had by ballot voted in favor of such expenditure. Therefore, if the plaintiff corporation had any power to construct Water street, particularly that portion of the same which is without the corporate limits, it must find the same within its implied powers or in its powers which necessarily must be assumed by the council in order to carry out the purposes for which the corporation was organized.

"A municipal corporation has such powers as are expressly conferred by statute, also all implied powers which are necessary to carry the expressly granted powers into effect, and further it may exercise powers not expressly granted which are necessary in order to enable a corporation to carry out the purposes for which it was organized." 1 Dillon, Mun. Cor. (4th Ed.) § 89, p. 145.

"Although a municipality has usually no authority outside of its own limits, yet authority to act beyond its boundaries is sometimes implied on grounds of special necessity. A city may acquire land beyond its limits for obtaining an outlet for its sewerage system or contract for the disposition of its discharge or agree to maintain a ditch. It may improve a road leading to a gravel bank which belongs to the corporation. It is competent for the Legislature, in the absence of constitutional restraint, to grant a municipality ex-

traterritorial jurisdiction, such as the right to maintain a park or a pesthouse or to construct an outlet for its sewerage system in the limits of adjoining municipalities or to improve roads beyond its boundaries." 28 Cyc. 954.

See Coldwater v. Tucker, 36 Mich. 474, 24 Am. Rep. 601, wherein the court, among other things, said:

"The authority of a city to provide sewerage beyond the city limits may be implied from the existence of a state of facts which renders it actually necessary or manifestly desirable, as where a city, though bounded by a stream, is required by its charter to preserve the stream from pollution and prevent the depositing of filth therein; and no other outlet is reasonably available, except through means of ditches extending beyond the limits of the city."

In the case at bar it must be admitted that it is not only manifestly desirable but also imperative that the street should be constructed from new town to old town in the town of Ketchikan in order that the people may have an opportunity to go from their homes to their places of business, for, as the evidence shows, many people who reside in new town have their business establishments in old town, and, as before stated, the evidence conclusively shows that the only practicable route over which to construct a street connecting the two portions of the town is the route adopted by the common council in the construction of Water street. See, also, Dillon on Municipal Corporations (4th Ed.) § 446; Albertson v. Town of Cicero, 129 Ill. 226, 21 N. E. 815; Cochran v. Village of Park Ridge, 138 Ill. 295, 27 N. E. 939. In the latter case the court said, among other things:

"It may be conceded that a municipal corporation cannot, as a general rule, exercise its powers beyond its own limits. If it has power to do so, that power must come from a statute which directly or indirectly confers the power. The section of the statute, supra, which confers authority on a village to make local improvements by special assessments, was no doubt intended to confine the improvement to the territory within the incorporated limits of the village, and under the statute the corporate authorities of the village would have no power to make improvements in territory outside of its incorporated limits. But what is the object and true scope of the improvement under consideration? Is it one within or outside of the incorporated limits of the village? The object was to furnish sewerage for the inhabitants of the village. The improvement was for the benefit of those then residing within the incorpo-

rated limits of the village, and for them alone; but in order to make the sewer a success, in order to make the improvement of any benefit to any person in the village, it must have an outlet. No outlet could be found within the incorporated limits. It became, therefore, absolutely necessary to extend the sewer a short distance outside of the incorporated limits in order to obtain an outlet. In order to carry out the true scope and object of the ordinance providing for the improvement, it became necessary to expend money outside of the incorporated limits of the village; but it does not follow because that is the case that the assessment here is made for an improvement outside of the village. The construction of the sewer from the incorporated limits of the village to Desplaines river, is not an improvement in that territory, but is one for the village, rendered a necessity from the geographical condition of the land upon which the village is located. The power to construct a sewer within the incorporated limits of a village would be a useless one, unless the sewer could be connected with an outlet; and, should we hold that the statute prohibited a village or incorporated town from extending a sewer or drain beyond the incorporated limits when it was necessary to do so to obtain an outlet, such a construction would defeat the obvious intention of the Legislature in passing the statute."

The language above quoted applies fittingly to the conditions surrounding the construction of Water street. The street was not constructed for the purpose of benefiting any abutting owner who might or did reside without the limits of the town, but was constructed for the purpose of benefiting the people of the town and connecting the two portions of the town as hereinbefore described. It is true that many occupants of tideland, who abut on the street or reside in the vicinity of the street, may benefit by the construction of Water street, but its purpose was evidently to connect the two portions of the town of Ketchikan, and thus provide reasonable access from one part of the town to the other. See, also, Maywood v. Village of Maywood, 140 Ill. 216, 29 N. E. 704; Langley v. City Council of Augusta, 118 Ga. 590, 45 S. E. 486, 98 Am. St. Rep. 133; Callon v. City of Jacksonville, 147 Ill. 113, 35 N. E. 223; Minnesota & M. Land & Improvement Co. v. City of Billings, 111 Fed. 972, 50 C. C. A. 70. In the latter case our own appellate court, among other things, said:

"Nor is any reason perceived why a portion of the improvement should not have been made on lands without the city. The scheme was to drain the city and thereby benefit the property thereof and to protect the health of its inhabitants. To accomplish this it was

necessary to extend the drainage beyond the city limits in order to obtain a proper outlet. The city council undoubtedly has the power, if it be granted the authority to make such improvements, to make it efficacious by extending it as far as necessary beyond the incorporated limits."

It is true nearly all of the cases herein cited apply to the extension of a sewerage system without the city limits, but, if a city has the implied power to extend and construct sewer pipes or ditches without the city limits for the purpose of preserving the health of the people of the town, why should it not have the power to construct a street between two portions of the city when the same is absolutely necessary, or, as was said by the Supreme Court of Michigan, manifestly desirable, in order to enable the people residing in one section of the town to go to and from the other section of the town where their business establishments are situated.

The first position or contention assumed by the defendant is therefore not tenable, for the town of Ketchikan had the implied power to construct and widen Water street, providing its common council proceeded according to law.

It may be contended that it was not necessary for the common council to exercise implied power in this instance, for the reason that under and by virtue of the fifth paragraph of section 4 (33 Stat. pt. 1, p. 531), above referred to, it is expressly provided that the common council may locate and construct to a limited extent trails and wagon roads outside the limits of the town, but leading to and from the same, where such roads and trails are necessary for promoting the welfare and prosperity of the town, but such work cannot be done except upon the unanimous vote of the entire council, unless the qualified voters of the town have at an annual election by ballot, by a two-thirds vote, voted in favor of such expenditure; but it is apparent that such provision of the law merely provides for the building of roads and trails outside of town limits, and has no reference to the building of streets connecting two different portions of the town or city. The paragraph of the statute last referred to is intended to accomplish an entirely different purpose from the purpose the common council had when it authorized the construction of Water

street; nor is there any reason for contending that the grant to the council of power to extend roads and trails from its limits to certain points without its limits, or in any manner, deprives the council of any of the implied or necessary powers which it would enjoy, in the absence of any such express grant in the charter.

Passing, therefore, to the second position assumed by the defendant (that is, that the majority of the abutting owners on said Water street did not sign the petition upon which the common council acted), the plaintiff contends, however, that the defendant is estopped from questioning the action of the common council, and is estopped from raising the question as to whether or not a sufficient number of abutting owners signed the petition, for the reason that he signed the same himself, and his signature to the petition, so says the plaintiff, amounts to a contract upon his part that he will pay his legal proportion of the cost and expense of construction of said street. The position of the plaintiff in respect to estoppel would be tenable, providing the defendant were complaining of some irregularities on the part of the common council; but the defendant goes farther. He attacks the jurisdiction of the common council, and contends that a sufficiently signed petition is a condition precedent to the power of the council to levy any portion of the expense against the abutting owners. The position taken by the defendant in that respect is sound, for, while one signing such a petition is estopped from questioning any irregularities in the acts of the common council in carrying out the purposes of such petition, yet he is not estopped from questioning the jurisdiction of the common council, for all his name to the petition indicates is that he is willing to be bound, providing the law is followed and a majority of the owners in value sign the same petition. In re Strout v. City of Portland, 26 Or. 294, 38 Pac. 126, the court said:

"One joining in a petition to the common council for local improvement does not thereby waive his right to have the proceedings in relation thereto conform to the mode prescribed in the charter."

See, also, 28 Cyc. 1014; McLauren v. Grand Forks, 6 Dak. 397, 43 N. W. 710; Mayor v. Porter, 18 Md. 284, 79 Am. Dec.

686; Steckert v. Saginaw, 22 Mich. 104; Tone v. Columbus, 39 Ohio St. 281, 48 Am. Rep. 438; Taylor v. Burnap, 39 Mich. 739.

The jurisdiction of the common council to exercise the power of laying out and constructing streets and taxing any portion of the expense thereof to the abutting owners is dependent upon the council's being petitioned to exercise such authority by the abutting owners of two-thirds in value; and, unless the petition in this instance was signed by the owners of two-thirds in value of the property abutting on Water street, the common council was without authority to construct such street and tax any portion of the expense thereof to the abutting owners. It therefore follows, since the existence of such a petition is a condition precedent to the power of the common council to exercise such authority, that the defendant is not estopped from questioning the sufficiency of the petition and denying that it contained a sufficient number of signers of the abutting owners, for, in the absence of such petition sufficiently signed, the common council was without jurisdiction to proceed to carry out the desires of any of the abutting owners, as expressed in the petition. It therefore becomes necessary to consider whether or not the petition contains the signatures of the owners of two-thirds in value of the property abutting on Water street; and, in determining this question, it will be necessary to ascertain whether or not two-thirds of the owners in value abutting on said street, whose property lies within the corporate limits, actually signed the petition, for the abutting owners, whose property lies wholly without the corporate limits, cannot be considered in determining whether or not the owners of two-thirds in value of the property abutting upon the street signed the petition, since property owners outside of the city limits cannot, by their invitation, consent, or acquiescence, give the council jurisdiction to exercise the powers conferred upon it by statute.

The burden of showing the insufficiency of the petition or that it did not contain a sufficient number of signers of the abutting owners must be assumed by the defendant, for the council acted in the widening and construction of the street

in question as a quasi judicial body, and, unless its records disclose a failure on the part of the common council to take all of the jurisdictional steps required by law, it will be presumed that the council acted according to law, and its ordinance, providing for the construction and widening of Water street, was passed pursuant to a petition sufficient in law to give the council jurisdiction to pass such an ordinance.

"Where a city council is prohibited from making any public improvement which will entail an assessment on the abutting property owners unless such improvement is petitioned for by the owners of one-half of the property to be affected thereby, and it appears from the record that such number have petitioned, and that the council have so determined, the burden of showing that the council did not have jurisdiction rests on the one who seeks to have the assessment declared void and removed as a cloud on his title." Allen v. City of Portland, 35 Or. 420, 58 Pac. 509.

"An order or ordinance passed on petition will raise a presumption that the petition is sufficient, and, unless so provided, the petition need not show on its face that the required number have signed it." 28 Cyc. 977; Allen v. City of Portland, 35 Or. 420, 58 Pac. 509; McManus v. People, 183 Ill. 391, 55 N. E. 886; Cummings v. West Chicago Park Commissioners, 181 Ill. 136, 54 N. E. 941; Wright v. City of Tacoma, 3 Wash. T. 410, 19 Pac. 42.

The burden being on the defendant to show the insufficiency of the petition upon which the acts of the common council are based, the question arises: Has the defendant successfully established, by a preponderance of the evidence, the insufficiency of the petition? Considerable evidence regarding the ownership of the abutting property was admitted by the court over the objection of counsel for the defendant; the latter contending that the only evidence admissible to establish such ownership are the records of the recorder's office indicating the owner of the legal title. The object of the petition is to indicate to the common council the desire on the part of the petitioners that certain improvements be made. When such a petition is filed with the council and legally acted on by that body, the law implies a contract on the part of the petitioners that they will pay a certain proportion of the expense of the construction or repairing of the street petitioned for; and it was within the power of the common council under the law to assess two-thirds of the expense against

the abutting owners in this instance. However, in the case at bar the common council assessed only one-half of the cost and expense against such owners. The purpose of the petition is the means of furnishing evidence of the desire of the abutting owners, and whatever method is followed in furnishing proof to the court of the ownership of the different signers cannot be very material, so long as it convinces the court that the owners of the property either signed the petition or authorized the same to be signed. The legal title might not correctly indicate the actual owner of the property, for the same might be held in trust for some one else, although not so expressed in the deed.

"Signature to the petition may be by agent, and the authority of such agent will be presumed, or may be proved by evidence dehors the record. But an unauthorized signature by one assuming to act as agent cannot be counted." 28 Cyc. 977.

"Where a petition for a public improvement shows on its face that the names of the property owners affixed thereto were signed by agents, the authority of such agents will be presumed and need not appear thereon, but may be proven by evidence dehors the record; and, if the council is satisfied that the agency exists, it may act, and its determination is prima facie evidence of the fact." Allen v. City of Portland, 35 Or. 420, 58 Pac. 509; Portsmouth Savings Bank v. City of Omaha, 67 Neb. 50, 93 N. W. 231.

Under the evidence, it is obvious that the defendant has failed to establish the invalidity of the assessment by proving the insufficiency of the petition. It therefore follows that the common council had the authority to widen and construct Water street, as alleged in the complaint, and that it exercised such authority according to law.

Let findings of fact and conclusions of law be entered in accordance with the prayer of the complaint.