100 591
114 334

MARY A. GILLISON, BY HER NEXT FRIEND, v. ISAAC F. CRESSMAN, DRAIN COMMISSIONER, AND JOSEPH M. CRAMER.

*Drains — Determination of outlet — Injunction — Irregularities— Decree—Supplemental proceedings.*

1. It is within the discretion of a township drain commissioner to determine what the outlet of a drain shall be.

2. Where, on the hearing in open court of a suit to restrain the completion of a public drain, the circuit judge, at the request of the parties, visits and inspects the premises, great weight should be given to his finding that no damage will result to the complainant by the completion and use of the drain.

3. Complainant, a minor, filed a bill to enjoin the further construction of an extension of a public drain which crossed her land, and in which said extension was to have its outlet. The extension did not traverse her land, which was not assessed for any portion of the cost, and the drain was nearly completed at the time the bill was filed. The drain crossing

complainant's land had been deepened and widened under proceedings instituted for that purpose, and the notice of letting contracts and of review of assessments for benefits had embraced both improvements. It appeared that the right of way across complainant's land had not been obtained in the deepening and widening proceedings, and that no proof had been filed of the publication of the notice above mentioned. The court found that the deepening and widening of the drain was necessary to the proper drainage of the lands for which it was originally constructed, and that no injury would result to complainant's land from the additional flow of water. A decree was entered remanding the drain proceedings to the drain commissioner, with instructions to proceed to advertise the letting of contracts for the completing of the extension, to give notice of the review of the assessments for benefits, to take all necessary steps to obtain the right of way through complainant's land, and to complete the proceedings in accordance with the statute; determining that all orders issued should be sustained, and applied upon the construction where expended by the proceedings already had, the expense of the commissioner already made to follow and become a part of the whole expense of the drain; providing that if complainant should within 10 days file a stipulation to discontinue the suit, and allow the extension to proceed, she might do so, and take a dismissal of her bill without costs; and continuing the bill, and the injunction issued thereon, until the further order of the court. And, upon the appeal of the complainant, it is held that as it does not appear that she will ever be called upon to pay anything, or that her land will ever be assessed, for the construction of the extension of the drain, and as it does appear that her land has not been so far injured, or is likely to be, she is not in a position to complain with said decree.

Appeal from Clinton. (Daboll, J.) Argued April 27, 1894. Decided June 2, 1894.

Bill to restrain the construction of a drain. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*J. O. Selden,* for complainant.

*John H. Fedewa,* for defendants.

LONG, J.   Thomas Gillison died June 9, 1887.   At the time of his death he was the owner of the S. E. ¼ of the N. E. ¼ of section 14, town of Bingham, Clinton county. He left a will, which was duly probated, by which he devised the land to his daughter, Elizabeth Ann Hicks, during her natural life, and the remainder in fee to his grand-daughter, the complainant in this case.   Mrs. Hicks, the life tenant, went into possession after the death of the testator, and has so continued ever since.   The .defendant Cramer owns the 40 acres adjoining the land above described, on the west, both 40's lying north of and along the east and west highway.

Some time before the death of Gillison, a public drain had been laid out and constructed, known as the "Smith & Gillison Drain," commencing near the south-east corner of Cramer's land, running thence north about 30 rods through the land of Cramer, and then south-easterly through the south-west corner of the Gillison 40.   Previous to the construction of this drain, the county drain commissioner had laid out and constructed a drain known as the "Stubbs Drain," having its upper terminus in the center of the highway, about 40 rods west of the south-east corner of Cramer's land, from which point it crosses, north-easterly, Cramer's land and the Gillison land.

In May, 1892, application was made to defendant Cressman, as township drain commissioner, for deepening and widening the Smith & Gillison drain.   This was done, and Mrs. Hicks, the life tenant, was charged, and is to pay, the expense assessed upon the Gillison 40 for such work.   On May 23, 1892, application was also made to Cressman to lay out and construct a drain known as the "Extension of the Smith & Gillison Drain;" and, on September 28 following, the commissioner made an order determining the necessity for the drain, and thereafter such proceedings

were had that contracts were let, and apportionment of costs and expenses made. The Gillison 40 was not assessed for any portion of the cost. The work was at once commenced, and all but about 23 rods constructed, which defendant Cramer had contracted to do. He had completed a part of his contract by digging about 9 rods of open ditch and laying 6 or 8 rods of tile. These several drains are shown upon the following map:

When the work had reached this point of completion, the complainant filed her bill, and obtained an injunction restraining the further construction of this drain. The drain in controversy is shown upon the map by the line extending along the highway eastward, thence north in

the highway, and thence east, where it connects with the Smith & Gillison drain.

The complainant's objections to the extension of this drain are:

1. That the running of the large volume of water proposed into and through the Smith & Gillison drain will be an increasing injury to her land, because the soil in and along said drain on her land is of quicksand and other light soil, so that the banks will not remain as dug, but will cave off, fill the drain, and the waters overflow her land.

2. That for this reason her land will be laid under perpetual tribute for the maintenance of said drain.

The testimony was taken in open court, and, on the hearing, the court below, at the request of the parties, visited the premises. It was claimed on the part of the complainant that a natural water-course could have been followed, and this extension turned into it, and thence into the Stubbs drain, while to carry off the water into the Smith & Gillison drain requires the cutting through quite an embankment. The court below on the hearing made a finding, in which he says, substantially, that, from the evidence and from a personal inspection, he finds no water-course in either direction, and that the elevation to be cut through does not vary enough to make any argument in favor of either route; that either outlet is practicable, and will furnish sufficient passage for the water; and that the deepening and widening of the Stubbs drain would cost as much as to reach the Smith & Gillison drain. The court below further found that the deepening and widening of the Smith & Gillison drain was necessary to drain the land properly, and that the water coming into it from this extension through the 12-inch tile will be no damage to the complainant's land. The court also found that the matter as to the course of the drain is

within the discretion of the drain commissioner, and that the court has no authority to interfere with him so long as he keeps within that discretion. It is further found, however, that the complainant has never been notified, and that no proper steps have ever been taken to obtain the right of way through her land, and that there is no proof on file of the publication of the time and place of letting the contracts, and of the review of assessments for benefits. The court says that it is conceded that this was not done, and complainant, being a minor, cannot be held to have waived anything in the matter; that, while there is no damage done, still there is an appropriation of the land, and the resulting tax. The court thereupon remanded the proceedings to the drain commissioner, with instructions to begin at the point where complaint is made, and proceed to readvertise, and to take all necessary steps to obtain the right of way for the contemplated improvement. It was further determined that all orders issued should be sustained, and applied upon the construction where expended by the proceedings already had, the expense of the commissioner already made to follow and become a part of the whole expense of the drain. It was further provided that if the complainant should within 10 days file with the register of the court a stipulation to discontinue the suit, and allow the drain to proceed, she might do so, and take a dismissal of her bill without costs. A decree was duly entered in accordance with these findings, from which complainant appeals. By the decree the injunction is retained until the further order of the court.

The court based its action with reference to ordering further proceedings by the drain commissioner upon *Cook v. Covert,* 71 Mich. 249.

We think the record fully sustains the finding by the court below that no damage will be done to the land of

complainant by taking the water from this drain through it. Great weight should be given to the finding of the court below in this case, for the reason that he not only saw the witnesses and heard their testimony, but himself visited the premises, and, after such inspection, arrived at this deliberate conclusion. As in the case of *Cook v. Covert, supra,* no steps were taken by the complainant until the drain was mostly completed and the greater part of the expense made. As said by the court below, it was within the discretion of the drain commissioner to determine what the outlet of this drain should be, and we find nothing in the proceedings showing any abuse of discretion. It does not appear in the case, as at present presented, that the complainant will ever be called upon to pay anything, or that the land of which she has the title in fee will ever be assessed, for the construction of the drain; and it affirmatively appearing that her lands have not so far been injured, or are likely to be, we do not think she is in a position to complain at present, at least with the order made, even if she have a right to appeal from the interlocutory order thus made, upon which we express no opinion, being content to let the order made by the court stand. Defendants will recover their costs of this Court.

The other Justices concurred.