Beasley v. Gravette.

Opinion delivered May 18, 1908.

Public ditch—Expenditure of money beyond county.—A drainage dis-
trict, created in one county for the purpose of draining lands therein,
may lawfully expend money in an adjoining county to carry the
proposed ditch to its most feasible outlet.

. Appeal from Poinsett Chancery Court; *Edward D. Robert-
son,* Chancellor; affirmed.

W. A. Beasley and Eli Dixon sued W. B. Gravette individ-
ually and as treasurer of Poinsett County, and the ,Canal Con-
struction· Company, an Illinois corporation, and J. A. Bradsher,
sheriff of Poinsett. County, alleging

COMPLAINT.

"That petitioner, W. A. Beasley, is the owner of the fol-
lowing lands, situate in the county of Poinsett and State of
Arkansas, to-wit:   the southeast quarter of southeast quarter
of section 16, township 10 north, range 7 east. That on the
23d day of July, 1906, a petition was filed in the county court of
said county, praying for the establishment of a public ditch,
for the purpose of draining the lands described above and other
lands adjacent thereto. That upon ·due consideration of said
petition the prayer thereof was granted, and the court appointed
three viewers and a civil engineer for the purpose of locating
said public ditch. That, after the filing and approval of the
preliminary report of said viewers, they were ordered and di-
rected to make and prepare a final report, as provided by law.
That said viewers recommended and. the court established the
public ditch on the route indicated by red lines on the maps
herewith filed as "Exhibit A" to this complaint, after which the
court ordered and ·directed the said engineer to proceed to. let
the contract for the construction of said ditch on the· route in-
dicated by said red lines, and accordingly· the said   civil  en-
gineer did, on the 28th day of December, 1907, at the Bank of
Marked Tree, in the town of Marked Tree, in the county of ·
Poinsett, State of Arkansas, offer to let the contract for the con-
struction of said ditch at public auction, when defendant Canal
Construction Company became a bidder and bid thereon 11.40

cents per cubic yard, and, that being the lowest possible bid, said contract for the construction of said ditch was struck off and sold to said defendant, which contract was by the county court of said county, at the January, 1908, term, approved and confirmed by said court. That, after the approval of said contract, the court ordered and directed that bonds be issued, based upon the assessment in said district, bearing interest at the rate of six per cent. per annum, and directed defendant W. B. Gravette, as treasurer of said county, to proceed to sell said bonds, the proceeds of which are to be applied to the construction of said ditch, and in the payment of said contractor. That for the purpose of constructing said ditch the land described above and owned by the plaintiff was and is assessed at the enormous sum of $5 per acre, which assessment bears interest at the rate of six per cent. per annum for a period of thirty years. That by reference to said map it will be seen that about three and one-half miles of said ditch is located in Crittenden County, and will represent more than one-half of the cost of the construction of the entire ditch, but none of the lands located in Crittenden County are embraced in said district, or assessed for the location and construction of said ditch, but the entire costs of the location and construction of said ditch is levied against lands lying wholly within the limits of Poinsett County.

"Plaintiffs would further show to the Honorable Court that plaintiff Eli Dixon is the owner of the following described tract of land, situate in Crittenden County, Arkansas, to-wit: east one-half of southeast one-quarter of section 15, township 9 north, range 7 east, which lies adjacent to and immediately west of the line of said proposed ditch, and also other lands; and if said ditch is constructed on the route indicated by the map filed herewith as "Exhibit A," it will result in the overflow of said lands with the waters of Dead Timber Lake, and will render the same utterly worthless for any purpose whatever. That defendant W. B. Gravette has advertised said bonds for sale, and, unless restrained by this Honorable Court, he will, within a few days, sell the same, and thus fasten upon the lands of plaintiff W. A. Beasley a first lien for the payment of said assessment of $5 per acre and interest, the major portion of which will be expended in the construction of said ditch in Crittenden

County, no part of which is embraced in said drainage district. That immediately after the sale of said bonds the defendant Canal Construction Company will proceed with the construction of said ditch, unless restrained by this Honorable Court, and when said ditch is constructed it will result in the overflow of lands of plaintiff Eli Dixon in Crittenden County, as herein alleged.

"That the defendant J. A. Bradsher is the sheriff and collector of said Poinsett County, and the interest on said assessment having been extended on the tax books by the county clerk, the same is now in his hands for collection, and, unless restrained by this Honorable Court, he will proceed to have said lands sold to satisfy the same, which will result in great embarrassment and irreparable injury to the plaintiff W. A. Beasley.

"Wherefore the plaintiffs pray that the sale of said bonds and the construction of said ditch be perpetually enjoined, and that said assessment be canceled and annulled as a cloud on the plaintiff W. A. Beasley's title, and grant the plaintiffs general relief."

## ANSWER.

Omitting the caption and style of the case, the following is a copy of the answer:

"Comes W. B. Gravette, individually and as treasurer of Poinsett County, Arkansas, and Canal Construction Company, a corporation of Chicago, and for their joint answer to the complaint filed in this cause, respectfully state to this Honorable Court: That they admit that petitioner, W. A. Beasley, is the owner of the tract of land set forth in said complaint; and that they admit that on the 23d day of July, 1906, a petition for a certain ditch, involved in this controversy, was filed in the county court of Poinsett County, as alleged; and that they admit that the organization of Drainage District Number Six, which was organized for the purpose of constructing the ditch involved in this controversy, was regularly formed, and that the proceedings in the county court of Poinsett County, Arkansas, were in all things regular, as admitted by implication in the complaint of plaintiffs; and that they further admit that defendant W. B. Gravette, as treasurer of Poinsett County, has been ordered to

sell bonds, as alleged in the complaint, and that plaintiff W. A. Beasley has been assessed the sum alleged upon his lands in Poinsett County; and that they further admit that plaintiff Eli Dixon is the owner of the lands described in complaint, situated in Crittenden County, Arkansas; and that they further admit that the map filed with the complaint and marked "Exhibit A" is a map of the said District Number Six, and that thereon is shown the proposed route of the ditch involved in this controversy; but defendants deny:

"First—That the assessment of $5 per acre upon the lands of said W. A. Beasley was excessive, and deny that he at any stage of the formation of this district, by answer or otherwise, indicated that he objected to this or to any other assessment made upon said lands.

"Second—Defendants deny that the lands of said Dixon in Crittenden County, Arkansas, will be in any way damaged by the construction of the proposed ditch, and file herewith and make a part of this answer a profile of said ditch, marked "Exhibit A," and ask that the same be made a part hereof, and respectfully ask the court to examine this profile, reading from left to right, and that this instrument, upon its face, shows that the high water mark of the part of the country involved in this question is below the surface of the lands involved in Crittenden County after the ditch leaves Dead Timber Lake, and that if the ditch is constructed, as shown by the said profile, it will be a matter of practical impossibility to overflow any lands in Crittenden County adjacent to the proposed ditch; and the plaintiffs state further that no assessment was made, or attempted to be made, on the lands in Crittenden County, for the reason that the lands in Crittenden County through which the proposed ditch is now located are high lands, and that, if an attempt had been made to assess these high lands, it would undoubtedly have been rejected by any court, and that hence the viewers did not make an attempt to assess the lands in Crittenden County, and for further answer these defendants state that the above facts were so well known that no other land owners in Crittenden County objected in any manner whatever to the construction of this ditch on the proposed route, other than they should receive proper payment for the lands used as a right-of-way.

"Defendants further represent to the court that Big Creek, into which the proposed ditch will empty, is a tributary of the Tyronza River, and that Dead Timber Lake flows into Tyronza River, and that this matter under consideration is simply a proposition to unite two of the tributaries of the Tyronza River in such a way as to hasten the exit of the water from the lands constituting Drainage District Number Six, a large part of which consists of lands now in cultivation, but that their cultivation has been attended with such great difficulty on account of the presence of water in the spring of each year, that the owners of the lands embraced in Drainage District Number Six united in the formation of that drainage district with a view of their mutual benefit.

"The special attention of the court is called to the map of Poinsett and Crittenden counties filed herewith and made a part hereof, and marked "Exhibit B," which clearly shows that the Dead Timber Lake and Big Creek both empty into Tyronza River, and that the proposed ditch is simply an attempt to shorten the route and hasten the flow of the waters that must finally find exit from both counties through the Tyronza River.

"Wherefore, these defendants pray Your Honor that the prayer of the complainants in this cause be denied, and that the defendants herein be dismissed with their reasonable costs."

### STIPULATION.

"It is agreed and stipulated in this case:

"First—That the construction of the ditch on the route indicated on the map filed as 'Exhibit A,' to the complaint will cost less and be of more practical value and produce better results than any other route that could have been selected; in fact, it is the only route that would give relief to the land owners whose lands are assessed.

"Second—That it will be of no benefit to the land owners in Crittenden County, but it will result in flooding and overflowing the lands of Eli Dixon, and inflicting upon him great injury.

"Third—The major part of the costs of constructing said ditch will arise from the construction of the ditch in Crittenden County.

"Fourth—The right-of-way for the construction of the ditch in Crittenden County has been given by the land owners.

"Fifth—Exhibits filed herewith are admitted to be correct."

The chancellor heard the case upon the complaint, answer and stipulation of counsel, and dismissed the complaint for want of equity.

*J. T. Coston*, for appellants.

1. The county court could not assess lands in Poinsett County to construct a ditch in Crittenden County. Kirby's Digest, § § 1438, 1442-3; 26 N. E. 193; 67 Ill. 559.

2. Surface water can not be lawfully discharged through an artificial channel directly upon the land of another greatly to his injury. 25 Wis. 225; 55 N. W. 408.

*R. L. Cowan*, for appellee.

1. Beasley is estopped by his own acts. He has had his day in court. Kirby's Digest, § 1428.

2. Court had jurisdiction. Kirby's Digest, § § 1415, 1438-9, 1440; 105 N. W. 19. Courts of one county where a petition for a drain is filed, etc., have jurisdiction of lands affected in another. 97 Ind. 23; *Ib.* 389; *Ib.* 605; 100 *Ib.* 380; 107 *Ib.* 181; 6 N. E. 353.

HILL, C. J. The case was tried on the complaint, answer and stipulation of counsel, which will be found in the Reporter's statement. It will be seen that the county court of Poinsett County, proceeding under sections 1414, Kirby's Digest *et seq.*, created a drainage district for the construction of a ditch, the object of which was to drain certain lands in Poinsett County. The most feasible route to construct said ditch was to carry it into Crittenden County, where it found its outlet. The proceeding was under the act of 1903, before its amendment by the act of 1907, which act is found in Kirby's Digest, § § 1414 to 1450. Section 1438 provides for proceeding where a ditch is to be located in more than one county. This section requires that the applications be made to the county court of each county by petitions filed by those liable to be benefited. It is only those whose lands are liable to be benefited who can put in motion the machinery to establish a dual drainage district. Under the agreed statement of facts here, it appears that there were no

lands to be benefited in Crittenden County, and therefore it was impossible to proceed by the joint action of the two county courts, as provided in section 1438 *et seq.* See *Albert* v. *Gilbert,* 105 N. W. 19.

The question, therefore, narrows to whether, the district being created by the court of Poinsett County under § § 1414 to 1417, it can lawfully spend its money in Crittenden County to carry the ditch through it to its most feasible outlet? In Indiana there is a statute which authorizes the formation of drainage districts in either county where the proposed ditch runs through several counties, and the court treats the ditch as an entirety, and holds that it is competent to give either county jurisdiction of the proceeding, and that the appraisers appointed in one county may act in the other county. *Shaw* v. *State,* 97 Ind. 23; *Crist* v. *State,* 97 Ind. 389; *Buchanan* v. *Rader,* 97 Ind. 605; *Updegraff* v. *Palmer,* 107 Ind. 181.

The value of these cases, as there is no similar statute here, is in treating the ditch as an entirety, and that it may be subjected as an entirety to the jurisdiction of one county, although it extends into several. It may be questioned whether the viewers, under the act in question, could condemn the right of way and assess damages, as prescribed in section 1421 of Kirby's Digest, in another county without statutory authority therefor. But that is not an issue here, for the facts are that the right of way was acquired in Crittenden County without condemnation proceedings.

The question is simply, whether a part of a ditch can be lawfully constructed by a drainage district out of the county which created the district, where such district could not be formed or proceed under section 1438, and such extraterritorial ditch does not benefit the other county, but is a mere outlet for the proper drainage of the lands benefited in the county where the district is created.

The court can see no constitutional or statutory objection thereto. The question is not one of diverting taxes from one county and expending them for the benefit of another county, such as *Hundley* v. *Comm'rs,* 67 Ill. 559. (*Rector* v. *Board of Improvement,* 50 Ark. 116, proceeds on similar principles.) Nor one of proper apportionment of taxes, as was *Crooks* v.

*State,* 26 N. E. 193. It is merely a question of carrying a ditch without the jurisdiction of the county which created it in order to obtain the most feasible drainage of the lands benefited. All the benefit of the ditch is to the lands in Poinsett County. It was to the advantage of the landowners of the district to have selected the most practical route to carry off the surplus water, and no good reason can be seen to compel the ditch to be dug on a more tortuous, difficult and expensive route in order to remain in Poinsett County throughout its course. The case is analogous to a sewer being constructed without the limits of a city. Take, for instance, the cities of Little Rock and Fort Smith, lying on the Arkansas River, the proper outlet for the sewers being many miles below them. To properly construct the sewers and their outlet, a considerable sum must necessarily be spent without the limits of the cities. Yet certainly no valid objection can be found to spending money raised by assessments on property within the cities without the cities in order to carry off the sewage of the cities.

Beasley, one of the plaintiffs, also raises a question as to his assessment; but he has had his day in court as to that. Dixon, the other plaintiff, makes allegations which, if true, might entitle him to damages against the district; but they would not entitle him to an injunction under his allegations and the agreed facts.

The judgment is affirmed.