## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF

# NORTH DAKOTA

GEORGE FREEMAN ET AL. v. JOHN TRIMBLE ET AL., as Drain Commissioners of the Counties of Bottineau and McHenry.

(129 N. W. 83.)

**Drain Commissioners — Powers.**

1. Boards of drain commissioners have only such powers as are expressly conferred by statute, or necessarily implied from powers conferred.

**Drains — Power of Commissioners — Discretion.**

2. In acting as drain commissioners, a large discretion is vested in them in assessing benefits and in determining when outlets for drains may be secured, and that discretion will not be interfered with where power is granted to them, except in case of fraud or manifest abuse of such discretion.

**Drainage Boards — Drains — Securing Outlet in Foreign Territory.**

3. Under §§ 1821 and 1822, Rev. Codes 1905, as amended by chapter 93, Laws of 1907, joint boards of drain commissioners have power to secure an outlet to drains established within their district, in foreign territory, where a public necessity exists for securing such outlets.

---

Note.—It being settled that drainage is one of the things which comes legitimately within the powers of the government, and that the expense of it may be met by taxation, the proper procedure for the establishment of drains and sewers and the validity of such proceedings become an important question to the people to be charged with the expense. This question is reviewed in an elaborate note in 60 L.R.A 161.

21 N. D.—1.

**Drains — Outlet in Foreign Territory — Powers of Drain Commissioners.**

4. Where it is necessary to improve, deepen, or widen the channel or bed of a river in this state in order to drain flooded lands, and the deepening and widening of such river in this state would not be effectual in draining such lands, without deepening and widening the river bed for about 12 or 14 miles after it passes into Canada, the drain commissioners have power to secure a suitable outlet by improving the river after it passes into Canada.

**Drains — Control of Improvement after Completion — Foreign Outlet — Contract with Foreign Municipality.**

5. In such a case, the fact that the control of the improvement after its completion is not vested in the county commissioners, but in the council of the municipality through which the river passes, in Canada, by virtue of a by-law of said municipality and a contract between it and the board of drain commissioners, does not defeat the right of the drain commissioners to secure such outlet by improving the river bed.

**Drains — Outlet in Foreign Territories.**

6. Section 1823, Rev. Codes 1905, as amended in 1907, making it necessary to secure the right of way to land through which drains in this state pass, has no application to improvement of water courses for drainage purposes.

**Drains — Foreign Outlet.**

7. Improving a water course after it passes beyond the drainage district for 12 to 14 miles into foreign territory, for the purpose of making an improvement of the water course in this state efficacious, is not an unreasonable exercise of the power of securing an outlet for drain purposes.

**Drains — Assessment of Benefits.**

8. The general principle that land benefited by a drain equally with other land, that is assessed for such benefits, shall not be arbitrarily omitted from such assessment, is not applicable where land in foreign territory is not, and cannot be, assessed for benefits incident to the construction of the drain in the drainage district that is assessed.

Opinion filed January 21, 1910.

Appeal from the District Court of McHenry county; *Templeton, J.,* by request.

Action to restrain the joint board of drain commissioners of McHenry and Bottineau counties. Order restraining joint drain board granted. Defendants appeal.

Reversed.

*Geo. A. Bangs,* for appellants.

Drainage boards can construct drains, and for outlets may go beyond their territorial limits, and expend money, the benefits at all times to exceed the expenses. 28 Cyc. Law & Proc. p. 954; 10 Am. & Eng. Enc. Law, p. 247; 1 Dill. Mun. Corp. 446; Tiedeman Mun. Corp. 201 & 294; Elliott, on Roads & Streets, 505; 2 Lewis's Sutherland, Stat. Constr. 508 & 511; People ex rel. Murphy v. Kelly, 76 N. Y. 487; Re New York, 99 N. Y. 584, 2 N. E. 642; Cochran v. Park Ridge, 138 Ill. 300, 27 N. E. 939; Maywood Co. v. Maywood, 140 Ill. 216, 29 N. E. 704; Ryder v. Alton, 175 Ill. 94, 51 N. E. 821; Payne v. South Springfield, 161 Ill. 285, 44 N. E. 105; Church v. People, 179 Ill. 205, 53 N. E. 554; Gillison v. Cressman, 100 Mich. 591, 59 N. W. 321; Schneider v. Menasha, 118 Wis. 298, 99 Am. St. Rep. 996, 95 N. W. 94; Cummins v. Seymour, 79 Ind. 491, 41 Am. Rep. 618; Yeomans v. Riddle, 84 Iowa, 147, 50 N. W. 890; McBean v. Fresno, 112 Cal. 159, 31 L.R.A. 794, 53 Am. St. Rep. 191, 44 Pac. 358; Manning v. Devils Lake, 13 N. D. 47, 65 L.R.A. 187, 112 Am. St. Rep. 652, 99 N. W. 51; Washer v. Bullitt County, 110 U. S. 558, 28 L. ed. 249, 4 Sup. Ct. Rep. 249; Minnesota & M. Land & Improv. Co. v. Billings, 50 C. C. A. 70, 111 Fed. 972.

*Skulason & Burtness,* for respondents.

Drain proceedings are statutory, and statute must be strictly followed. Gable v. Deal, 150 Mich. 430, 114 N. W. 214; Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 112, 41 L. ed. 369, 17 Sup. Ct. Rep. 56; Dakota County v. Cheney, 22 Neb. 437, 35 N. W. 211; Casey v. Burt County, 59 Neb. 624, 81 N. W. 851; Witty v. Nicollet County, 76 Minn. 286, 79 N. W. 112; Dill. Mun. Corp. 445, 446; Fraser v. Mulany, 129 Wis. 377, 109 N. W. 139.

Board cannot construct drainage outlets beyond its own territorial limits. 28 Cyc. Law & Proc. pp. 266, 605, 703; Trester v. Sheboygan, 87 Wis. 496, 58 N. W. 747; Thompson v. Moran, 44 Mich. 602, 7 N. W. 180; Cooley, Const. Lim. 176; Tiedeman, Mun. Corp. § 338, p. 676; Becker v. La Crosse, 99 Wis. 414, 40 L.R.A. 829, 67 Am. St. Rep. 874, 75 N. W. 84; Cooley, Const. Lim. 176; Alger v. Slaght, 64 Mich. 589, 31 N. W. 531; Robertson v. Baxter, 57 Mich. 127, 23 N. W. 711;

Hubbell v. Robertson, 65 Mich. 538, 32 N. W. 811; Lager v. Sibley County, 100 Minn. 85, 110 N. W. 355.

MORGAN, Ch. J. This action involves the validity and legality of a drainage project instituted under chapter 23, Rev. Codes 1905, as amended by chapter 93 of the Laws of 1907. The plaintiffs are residents and freeholders of McHenry county, whose lands will be affected by the construction of the proposed drain. The defendants are members of the board of drainage commissioners of the county of McHenry and the members of the board of drainage commissioners of the county of Bottineau, acting as a joint drainage board of said counties, through both of which counties the proposed drain passes.

The complaint alleges, in substance, the following facts: That the defendants, acting as a joint board of drainage commissioners of the counties of McHenry and Bottineau, held a meeting on the 1st day of June, 1908, for the purpose of establishing a drain through the counties of McHenry and Bottineau, and thereafter said joint board attempted and pretended to assess the lands of the plaintiffs for the purpose of constructing said drain, designated as Mouse River Drain No. 9. In the complaint, it is further alleged that no legal petition was ever presented to said drainage boards of either of said counties, nor to said joint board, signed by freeholders of said counties, whose property is to be affected by the drain, and that, in consequence of such fact, no authority whatever was conferred upon the defendants to act in reference to the establishment of said drain. The invalidity of the acts of the joint board of drainage commissioners is based upon the alleged fact that the drain was not to be established as described in the petition of the freeholders of said counties, but the same was to be constructed and established by widening, deepening, and clearing out the channel of said Mouse river after it had crossed the International Boundary Line between Bottineau county and the province of Manitoba, and extending such improvement into Canada for a distance of about 12 miles beyond the said International Boundary Line.

The complaint further alleges that said joint board of drainage commissioners is about to submit the proposition of the construction of said drain to contractors to do the work for the lowest bid, and was about

to enter into a contract for the making and constructing of said drain with the lowest bidder.

The relief asked is that said board be permanently enjoined from entering into such contract, and from doing anything further toward the establishment of said drain.

The judge of the district court of the ninth judicial district issued a preliminary injunction against said joint board of drainage commissioners, restraining it from entering into any contract for said purpose until a further order of the court. Upon the return day of the order to show cause why said drainage commissioners should not be permanently restrained from further proceedings in reference to the construction of said drain, the parties appeared before the judge of the first judicial district, acting by request of the judge of the ninth district, and, after a hearing, the preliminary injunctional order was continued in force. From this order the defendants have appealed.

In the trial court the facts were stipulated by the parties, and are, in substance, as follows: The proceedings of the drainage boards are not in any way attacked except so far as the joint board is attempting to act outside of the limits of the state of North Dakota, and within the Dominion of Canada, in reference to widening and deepening the channel of said Mouse river after it enters into Canada. So far as such acts are concerned, the plaintiffs contend that they are wholly unauthorized, and that there exists no power, express or implied, in the drainage board to perform such work.

The facts stipulated are here only summarized. It appears that about 22,000 acres of land in McHenry and Bottineau counties have become flooded by reason of the clogging up of the channel of the Mouse river, and, in consequence of that fact, this land has become to a great extent useless for agricultural and grazing purposes. The Mouse river enters the state of North Dakota in the eastern part of Ward county, and thereafter flows in a southeasterly course for about 65 miles from the International Boundary Line. It then changes its course to an easterly, and afterwards gradually to a northerly, and thereafter to a northwesterly, direction until it reaches the International Boundary Line at a place about 40 miles east of its entrance into the state of North Dakota, and after having passed through Mc-Henry and Bottineau counties since it left Ward county. The

object of the drainage project is to reclaim this land by deepening and widening the river bed and channel throughout its course for about 30 miles south of the International Boundary Line, and making such deepening and widening of practical utility by securing a sufficient outlet for the accumulated water by deepening the channel of the river after it flows into Manitoba.

The county commissioners of said counties of McHenry and Bottineau each appointed a drainage board for their respective counties, and these two boards were duly and regularly petitioned by residents and landowners interested, to establish a drain by improving the channel of the river, as before stated, within said counties. Each of these drainage boards employed the state engineer of the state of North Dakota, who made an examination of the river and the flooded lands, and thereafter made a report to said boards to the effect that such lands could be reclaimed and the water drained from them by deepening the channel of the river and by widening the river bed where there are sharp curves in its course. These two drainage boards made an examination of the proposed drain within their respective counties, and by resolution declared that such drain was necessary for the public good. Thereafter these boards met as a joint drainage board for said counties, and duly organized, and employed said state engineer to prepare plans, profiles, and plats of the lands to be drained, and by resolution declared such drain to be necessary for the public good. Thereafter said engineer filed a report with the joint drainage board, and said board fixed July 10th, 1908, as the day when objections to the proposed drain would be heard; and on said day, said board declared by resolution that the drain was a public necessity, and that its cost would not exceed the benefits to be derived therefrom. On that day, said board also made an order designating the commencement of said drain, its course, and terminus, and its name to be "Mouse River Drain No. 9." In such order it was declared that such drain was a public necessity, and for the public good and health.

In his report the state engineer recommended and advised that the terminus of the proposed drain be changed from the course petitioned for, and established by the respective county drainage boards; and the joint board by resolution declared that the recommendations of the engineer should be followed, and that the drain in the river was to be

extended to the mouth of North Antler creek, where it empties into the Mouse river, about 12 to 14 miles north of the International Boundary Line, in Canada. The report of the engineer showed that it would be useless to deepen and widen the river bed and channel in McHenry and Bottineau counties, unless the river was improved on the north side of the boundary line in Canada, for the purpose of making an outlet for the accumulated water at or near the boundary line.

It is also stipulated that the total cost of such drain will be approximately $142,000, of which about $70,000 will be required to do the work in Canada to provide such outlet for the water on the flooded land in McHenry and Bottineau counties. It is also stipulated that Mouse river is not a navigable stream.

The territory across the boundary line through which the improvements of the river bed are to be made is within the "Rural Municipality of Arthur," and is under its governmental control. This municipality passed a by-law in reference to the improvement of the river by the joint drainage board, known as "By-law No. 372," and such by-law was enacted by the council of said Municipality of Arthur, pursuant to § 557 to 577 of the "Municipal Act" of the Dominion of Canada. There is nothing in the record showing the precise power of the officers of the said "Rural Municipality of Arthur." It appears that such municipality is governed by a council, and that, in enacting the said by-law, the officers or council were acting under the general "Municipal Act" of the Dominion of Canada. Said by-law recites that certain lands in McHenry and Bottineau counties in North Dakota are covered by water to such an extent as to render the same unfit for use. It also recites all the proceedings that had been taken by the drainage boards of these two counties, and by the joint drainage board thereof. The course, commencement, and terminus of the proposed drain is stated in the by-law. It also recites that certain lands within said Municipality of Arthur would be beneficially affected by the construction of said drain, and such lands are specifically described. It also recites that a certain portion of the owners, and such portion as is required by statute, had petitioned that the authorities of Bottineau and McHenry counties be permitted to construct such drain, provided that the cost of the construction and completion of such drain should be entirely borne by the owners of the land situated in

the counties of Bottineau and McHenry; and providing, further, that said drainage works and improvements in said river, situated within said municipality, should, when completed, be controlled by the Rural Municipality of Arthur, in the Province of Manitoba. It is further provided in said by-law that the Reeve and Secretary-Treasurer of said municipality be authorized to enter into and execute, under the corporate seal and on behalf of said municipality, a contract to secure the construction and completion of said improvements, and in regard to the proper maintenance of the same and the carrying out of the provisions of said by-law. Such a contract was duly entered into between the Rural Municipality of Arthur and the joint board of drainage commissioners, on February 24th, 1909. In said contract, the provisions of said by-law No. 372 are recited, and the contract specifies that the municipality permits and suffers said drainage commissioners to construct the said drainage works and make the said improvements in the Mouse or Souris river, northward from the International Boundary Line to the mouth of North Antler creek, in accordance with the plans and specifications prepared by the state engineer of the state of North Dakota. The contract further provides that the commissioners are bound to improve the river and complete such improvements in a good and workmanlike manner, and to keep the same in repair without charge or cost to the Municipality of Arthur, and that the commissioners are to assume and pay all damages or losses which might accrue or arise in consequence of the construction of said improvements, and that the said municipality is to be at all times made harmless on account of making of such improvements or the maintenance thereof, and that all improvements by reason of the construction of said drain in the river north of the International Boundary Line is to be controlled by the Municipality of Arthur and maintained by said commissioners of McHenry and Bottineau counties.

The plaintiffs urge the following grounds against the validity of the proposed action of the joint drainage board:

1. Control of the drain, and title to the right of way to same, are reserved to the Rural Municipality of Arthur, contrary to the provisions of the drainage statutes of this state.

2. That benefits are conferred on lands in Canada, which are not assessed for such benefits.

3. No power exists in drainage boards to secure an outlet to drains in foreign territory.

4. If power exists in drainage boards to secure an outlet in foreign territory under some circumstances, the outlet to be secured is an unreasonable distance beyond the limits of the drainage district in this case.

The district court held that the extension of the drain into Canada was unauthorized and contrary to law, upon the first and second grounds enumerated above, and overruled the contentions of the plaintiffs upon the fourth ground, and expressed no opinion upon the third ground urged.

Each of these objections to the validity of the drainage proceedings presents questions of grave and far-reaching importance. If the drainage board be not restrained from further proceedings, the owners of these flooded lands are irreparably and injuriously affected, as there is no other plan by which their lands can be drained and rendered of use for agricultural purposes. The health of the whole community may also become affected if the water is permitted to stand on such a large area. On the other hand, if no power exists in the board to perform the necessary work outside of the territory over which they have control, the question of injury should not be considered, as greater abuses and injury may follow by permitting the assumption of power not granted, than would follow if the drainage board be now restrained.

Unless authorized by statute, under a fair and reasonable construction of its provisions, no power exists in the board to do this work beyond its own territory. In other words, drainage boards are creatures of statute, and they have no powers except such as are expressly granted by the statute or reasonably implied from the powers granted. If such power exists, it is by virtue of §§ 1821 and 1822, Rev. Codes 1905, as amended by chapter 93 of the Laws of 1907. Section 1822, so far as material, reads as follows: "If it shall appear that there was sufficient cause for the making of such petition, and that the proposed drain will not cost more than the amount of the benefits to be derived therefrom, the board of drain commissioners shall thereupon make an order establishing the drain, accurately describing it, and give the same a name by which it shall be recorded and indexed."

On the part of respondents it is contended that this section grants the power to establish drains only in territory within its jurisdiction, and that it confers no authority to extend the proposed drain into foreign territory. The appellants contend that it grants power to extend the drain into any territory in case it becomes necessary to do so, when such extension can be made without committing a trespass or violating any law, and when the cost of the same, together with the cost of the main drain, does not exceed the benefits to the land to be drained within the district.

Under certain circumstances, the board is authorized under said § 1821, Rev. Codes 1905, as amended in 1907, to vary from the line described in the petition, and when the land described in the petition does not give sufficient fall to drain the land, the board may extend the line below the outlet named in the petition; and authority is given to clear out and straighten out channels far enough to obtain a sufficient outlet. That section reads as follows: "When the length of the line described in the petition does not give sufficient fall to drain the lands sought to be drained, the board of drain commissioners may extend the drain below the outlet named in the petition, far enough to obtain a sufficient fall and outlet." In his report the engineer states that "the length of the drain described in the petition did not give sufficient fall to drain the land sought to be drained, and that in order to obtain sufficient fall to drain said lands, such drain must be extended into Canada a distance of approximately 15 miles." In his report, the engineer advised the drainage board to vary the terms of the drain as petitioned for to that extent, and the board, by resolution, adopted such recommendation.

The power to establish drains would often be of no beneficial use whatever if the drainage boards must stop all the work at the boundary line of their districts. In this case the drain proper, being the river, is not in foreign territory. The drain is in McHenry and Bottineau counties. To find an outlet the board was forced to secure it by dredging and widening the river in Canada, or entirely abandon the project. We think the power to secure an outlet outside of the drainage district is necessarily implied from the power to establish a drain up to the boundary line in Bottineau county. The construction contended for by the respondents is too strict. It, in effect, requires reading into

the statute that a drain cannot be extended to find an outlet outside of the district. It means, in effect, also, that a drain cannot be constructed within the district if it becomes absolutely necessary, to make such drain of use, to secure an outlet outside of the district. What is here said in reference to said section is also applicable to § 1835, Rev. Codes, 1905, pertaining to improvement of streams for drainage purposes.

In Maywood Co. v. Maywood, 140 Ill. 216, 29 N. E. 704, the court said: "It is insisted by appellants that no right of way for this easterly extension has been or can be obtained by the village authorities, and therefore the whole proceeding is illegal, the position being that the corporate authorities of a city or village can exercise no power beyond its limits in the construction of a local improvement like the one in question, our statute conferring upon them no such right. The village, in this case, claims the right to pass over the private property east of its limits by deed from the owner, but whether it has such right or not, in our opinion, is immaterial as to the validity of the assessment in question. The simplest form in which the question raised can be considered is, Can a valid ordinance be passed by a village to extend a sewer beyond its limits? No ordinance for a local improvement is valid which does not describe the improvement contemplated, and, therefore, if in that description it shows an attempt to do that which it is not authorized to do, the ordinance is void on its face. The general doctrine that a municipal corporation can only exercise its powers within its corporate limits is conceded. The rule is founded on the fact that, generally, no authority is given by their charters to act beyond such limits, and hence corporate authorities are restricted in that regard, as in all other attempts to exercise corporate authority, by the general rule that they can exercise only such powers as are granted by express words. This general rule has, however, the qualification that such authorities may also do those things which are 'necessarily or fairly implied in or incident to the powers expressly granted.' We have already decided that a village may lawfully extend its sewers beyond its limits for the purpose of securing a suitable outlet for the same. Shreve v. Cicero, 129 Ill. 226, 21 N. E. 815; Cochran v. Park Ridge, 138 Ill. 295, 27 N. E. 939. In such case the improvement is within the corporate limits and for the exclusive use

and benefit of the municipality. The extension and outlet only serve the purpose of giving practical effect to the sewer or system of sewerage. No one will deny that a sewer in a city or village is a local improvement, within the meaning of § 1, art. 9, chap. 24, of the Revised Statutes. Hence, the power to construct it under the provisions of that article is expressly given, and the right to also provide suitable outlets for the same, even outside of its boundaries, must result by fair and necessary implication, otherwise the express power would in many instances be unavailing."

In Coldwater v. Tucker, 36 Mich. 474, 24 Am. Rep. 601, the court said: "The general doctrine is clear that a municipal corporation cannot usually exercise its powers beyond its own limits. If it has in any case authority to do so, the authority must be derived from some statute which expressly or impliedly permits it. There are cases where considerations of public policy have induced the legislature to grant such power. The commonest instances are where a supply of water can only be obtained from a distance. . . . There seems to be no reason why an outlet should not be sought elsewhere, provided the charter furnishes the means of obtaining one, expressly or by fair implication. If it can only be obtained by building a sewer or ditch beyond the city, the charter seems to be defective, in making no express provision for such works. But if by leading a sewer or ditch to the city limits it can be connected with an outlet beyond, there would seem to be no reason for preventing such connection. Drainage is a public necessity."

In Washer v. Bullitt County, 110 U. S. 558, 28 L. ed. 249, 4 Sup. Ct. Rep. 249, the court said: "The power conferred upon the county court by the statute of Kentucky to erect and keep in repair necessary public bridges includes within its terms a bridge across the county boundary, as well as one wholly within the county limits. Unless, therefore, there is other legislation which modifies the power thus conferred, the authority of Bullitt county to contract for the erection of the bridge in question is plain."

In Minnesota & M. Land & Improv. Co. v. Billings, 50 C. C. A. 74, 111 Fed. 972, the court said: "Nor is any reason perceived why a portion of the improvement should not have been made on land without the city. The scheme was to drain the city and thereby to

benefit the property thereof and to protect the health of its inhabitants. To accomplish this, it was necessary to extend the drainage beyond the city limits, in order to obtain a proper outlet. A city council undoubtedly has the power, if it be granted the authority to make such improvement, to make it efficacious by extending it as far as necessary beyond the corporate limits."

In People ex rel. Murphy v. Kelly, 76 N. Y. 475, the court said: "Nothing is here but the question of power; if it existed, we must so declare. The responsibility for its exercise is not ours. It appears to be conceded and has not been denied that the acquisition and maintenance of public parks, securing pure air and healthful rest and recreation to the people, is a city purpose when executed within the corporate limits, and the sole contention is that it ceases to be a city purpose when in any degree or to any extent it moves outside of those boundaries. What is the change which transforms the inherent nature and character of a city purpose when it passes the municipal lines, we are told by the grouping of extreme consequences foretold as possible results."

In Shreve v. Cicero, 129 Ill. 226, 21 N. E. 815, the court said: "The extension of the sewer south in the town of Lyons, from thirty-ninth street to Mud Lake cannot be regarded as a local improvement in another town. Suppose no outlet could be found without extending the sewer a short distance into the territory of another town. We think the town authorities would be authorized in such a case to do so, without a violation of the rule announced in the case cited."

The following cases announce the same general principles. Whereas no one of the cases is based upon facts where the corporate authorities did work or secured outlets for sewers or drains in territory outside of the United States, we do not see that the question of power should be limited in case of necessity, in cases of going outside the limits of the United States, any more than in extending the power by going beyond the boundaries of cities, counties, or townships for outlets. 28 Cyc. Law & Proc. p. 954; 10 Am. & Eng. Enc. Law, p. 247; 1 Dill. Mun. Corp. 446; Elliott, Roads & Streets, 505; Lester v. Jackson, 69 Miss. 887, 11 So. 114; Gillison v. Cressman, 100 Mich. 591, 59 N. W. 321; Schneider v. Menasha, 118 Wis. 298, 99 Am. St. Rep. 996, 95 N. W. 94; Re New York, 99 N. Y. 569, 2 N. E. 642; Beasley v.

Gravette, 86 Ark. 346, 110 S. W. 1053; Langley v. Augusta, 118 Ga. 590, 98 Am. St. Rep. 133, 45 S. E. 486; Haeussler v. St. Louis, 205 Mo. 656, 103 S. W. 1034; McBean v. Fresno, 112 Cal. 159, 31 L.R.A. 794, 53 Am. St. Rep. 191, 44 Pac. 358.

Our conclusion upon this point is that the drainage board had authority, under a reasonable construction of the statute, to expend money for the improvement of the Mouse river for the distance stated in Canada, as a public necessity, for the benefit of the landholders in Bottineau and McHenry counties. If a reasonable construction of the statute did not authorize the board to go beyond the limits of the district, we think it clear under the authorities cited, that such power was clearly implied from the express power granted such boards to establish drains within their districts.

It is claimed that there will be an abuse of the power in this case in extending the work of improving the channel 12 to 14 miles beyond the boundary line. This is presented as a ground for restraining the board, conceding for the purposes of the case that the power to establish an outlet in foreign territory exists. From the record it appears that it will be necessary to improve the river to that extent to secure an effective outlet. Without going that distance the improvement within the counties of McHenry and Bottineau would be entirely ineffectual, and would not result in relieving the flooded lands of the water gathered thereon. Inasmuch as we have concluded that such power exists in the board to go beyond the limits of the district in cases of necessity, we do not see that there was any abuse of the power under the circumstances of this case. The question as to what is a reasonable distance depends upon the facts of each case. What may be a reasonable distance under one state of facts might be deemed unreasonable under another and different state of facts. As stated by the trial court in its opinion, the term "reasonable distance" is a relative term, and that court determined that the board did not exceed what would be deemed a reasonable distance under the facts of this case. Determining to what distance it becomes necessary to go to find an outlet to accomplish the purpose desired is a question of policy for the consideration of the board, and the determination of the board in such cases will not be interfered with except in cases of fraud or manifest abuse.

It is next urged that the proposed improvements should be restrained as contrary to the provisions of the statute, for the reason that they are to be under the control of the Rural Municipality of Arthur after their completion. The by-law provides that such improvements within the Municipality of Arthur "shall, when completed, be controlled by the Rural Municipality of Arthur, . . . and shall be maintained by or under the supervision of the joint board of drain commissioners."

Under § 1842, Rev. Codes 1905, all drains situated in this state are to be under the charge of the board of county commissioners, and are by them to be kept open and in repair. From the provisions of this section it is argued by the respondent that it has been violated by the contract entered into between the Rural Municipality of Arthur and the joint drainage board of the two counties named. Under the express language of said section, its application is limited to drains constructed in and situated within this state. We do not think that it was the intention of the legislature to say that its provisions should be applicable under the circumstances of this case; that is, where the outlet is only sought in foreign territory by widening a stream. No statute makes such control necessary where a stream is widened for drainage purposes or to secure an outlet. If absolute control of streams be required as a condition precedent to securing outlets in a foreign country, such outlets, in most cases, could not be acquired.

If the contemplated improvement was to consist of a permanent building or other fixture, a different question would be presented. It is not necessary to pass upon that question, as it is not presented in this case. The so-called improvements to be made in this case consist of dredging the river, and widening and deepening the channel. Although the work or improvement under consideration is called a drain in the pleadings and other papers, it is not in reality a drain in the common acceptation of that term. The contemplated improvement is in part governed by § 1835, Rev. Codes 1905, which reads as follows: "The powers conferred by this chapter for establishing and constructing drains shall also extend to and include the deepening and widening of any drains which have heretofore been or may hereafter be constructed; also to straightening, clearing out, and deepening the channels of creeks and streams, and the construction, maintaining,

remodeling, and repairing of levees, dykes, and barriers for the purpose of drainage, and the board of drain commissioners may relocate or extend the line of any drain if the same is necessary to provide a suitable outlet, and shall cause a survey thereof to be made; but no proceedings affecting the right of persons or property shall be had under this section, except upon the notice, hearing, and award prescribed in this chapter for the construction of drains in the first instance."

The improvement in this case consists in dredging, deepening, widening, and straightening the river bed and channel; and, whenever the course of the river is changed, the persons owning land through which the river will flow where its course is changed after crossing the boundary line have petitioned for and consented to such change. No objections to these proceedings have been made by anyone on the ground that land owned by persons along the stream is being taken without their consent. The same principles do not apply in this case as in cases of drains through land independent of a stream. When these improvements are completed, there will be nothing there that has not always been there. The river will be there, and nothing more. There is no control of the river bed or channel vested in the county commissioners within their respective counties, even, as against the rights of riparian owners. When, therefore, a river bed or channel is improved for drainage purposes, the control thereof is not with the county commissioners, but remains where it has always been, with the riparian owners, subject to the rights of upper and lower owners along the stream to a reasonable use of the water therein for certain purposes. We do not think that the by-law of the municipality or the contract was of any effect so far as control of the drainage commissioners over the stream is concerned. And though the cost of improving the river in Canada is incurred in connection with the drain as constructed in Bottineau and McHenry counties, and is assessed against such lands, we fail to see that the fact as stated in the contract and by-law that control shall remain in the municipality is any ground for restraining all further acts by the joint board. Under the by-law, the right of the joint board to maintain the drain in the river is guaranteed. By this nothing less can be meant than that the river is in charge of the joint board for purposes of keeping it in repair and maintaining it.

We do not think that the argument of the respondent, to the effect that the drainage board has assumed to become responsible for all future damages on account of the maintenance of the drain, presents a question of power. That question is one more of policy or expediency than of power. In view of the fact that the Municipality of Arthur, by a by-law, consents to the making of the improvements, and in view of the fact that the owners of the land across the line have petitioned for the improvement, we think that the danger of future interference with the joint board in maintaining the improvement is slight, if not altogether out of the question, and too remote for consideration.

What has been said in regard to the consequences following the fact that control of the improvement is not vested exclusively in the county commissioners is controlling on the point urged against the validity of these proceedings, for the alleged reason that the right of way to the river channel in Canada was not secured by the drainage board. The statute provides that the county commissioners shall acquire the right of way, and that it shall be the property of the county. § 1823, Rev. Codes 1905. We do not think that this section is applicable, or intended to be applicable in cases of improving natural water courses for drainage purposes. In this case the joint drainage board is concerned only in securing right to increase the flow of the river in the counties of Bottineau and McHenry, and this fact has naught to do with the title to the land through which the river flows.

The next contention on behalf of the plaintiffs and respondents is that the proceedings of the drainage boards are null and void, and should be restrained permanently for the reason that certain lands in Canada are materially benefited by the construction of the drain, without any assessment being levied thereon to pay for such benefit; and that the cost of such improvement, resulting in such benefits to these lands, is assessed against the land of the plaintiffs. The question whether the lands in Canada are materially benefited by the construction of this drain is not conceded by the appellant. In fact, it is strenuously insisted by them that these lands will only be benefited to a trifling extent. The engineer, in his report, states in respect to the amount of land to be benefited in Canada, as follows: "There is a very small amount of land between the International Boundary Line and the C. P. Ry., 6 miles north, that may possibly be benefited to a

small extent, but this land is very alkali and also very stony, and would be practically of no value even if it was drained. The land north of the C. P. Ry. in Canada down to the North Antler creek, the terminus of our proposed drain, lies so much higher than the stream does that there will be no benefit accruing to this land." The drainage board, acting under such report of the engineer, considered this question of the amount of land to be benefited in Canada, and found, after investigation, that there was but "small acreage to be benefited incidentally thereby." There is much force in appellant's contention that this finding of the board is conclusive on all persons making only a collateral attack on that finding, as in this case.

However, the rights of the parties on this appeal will be determined on the theory that the lands on the north side of the boundary line will be materially benefited, by the construction of this drain. The trial court was impressed with the fact that such lands will be materially benefited, and held all the proceedings void for the reason that the cost of constructing the drain north side of the line was assessed against the lands of the plaintiffs and other owners of lands benefited in McHenry and Bottineau counties, and that none of the cost was assessed against the lands benefited on the north side of the boundary line. This conclusion of the trial court was reached upon the assumption that assessments must be equally borne by the land, in proportion to benefits to all the benefited land, whether within the district or beyond the limits of the district. It is true that the intentional omission from assessment for benefits, of land benefited, in a drainage district, will sometimes wholly vitiate the whole assessment, although there is a large discretion vested in drainage boards as to what benefits are to be assessed; and this discretion will not, except in case of fraud or abuse, be interfered with. No question of wilful omission of lands within the drainage district is presented in this case, and the general rule applicable in such cases it is not necessary to define. In this case the land in Canada was not assessed for benefits, and could not, under any circumstances, be assessed for benefits by the drainage boards of Bottineau and McHenry counties. The power to assess such lands rests wholly with the authorities in the Dominion of Canada. The question is therefore presented: Must all these contemplated improvements be abandoned for the reason that assessments of benefits

accruing to lands in Canada is impossible, because the drainage board possesses no authority to levy assessments beyond the limits of its district? The improvement in this case is not undertaken for the benefit of the owners of land situated in Canada. The sole purpose of the petitioners is to secure the drainage of their own lands, situate in Bottineau and McHenry counties. It clearly appears that the expenditure, although large, does not exceed the aggregate benefits. The ratio of the assessment per acre is very small compared to the benefits that will accrue to the land if the project can be maintained. It being undisputed that the purpose of the proceedings is to benefit lands in Bottineau and McHenry counties, should the fact that lands beyond the limits of these counties, in Canada, are materially benefited, nullify all the proceedings and subject them to be perpetually restrained? The trial court so held upon the general principle of the law before stated, relying upon the case of Masters v. Portland, 24 Or. 161, 33 Pac. 540, as sustaining that principle. That case was in reference to a different state of facts. Lands within the assessment district were wilfully, arbitrarily, and intentionally omitted from the assessment, although materially benefited, and benefited equally with the assessed lands in the same district. No such question is presented here, inasmuch as it was beyond the power of the drainage board to include the lands in Canada in the assessment or apportionment of benefits.

The respondent also relies on Fraser v. Mulany, 129 Wis. 377, 109 N. W. 139, to sustain this contention. That case also presents a question of the intentional omission of benefited lands from assessment, which was within the jurisdiction of the assessing body. It is not, therefore, in point under the facts of this case. No other cases are cited on this point.

The direct object sought in these drain proceedings is to improve the lands within the drainage district as petitioned for. It is undisputed that the total benefits to the lands within the district in Bottineau and McHenry counties exceed the total cost of the improvement in these counties as well as in Canada. Work is to be done in the Dominion of Canada for the express purpose of benefiting land within the drainage district in said counties. The benefit to the lands in Canada is one of the indirect or incidental results of the work absolutely necessary to be done for the improvement of the lands in these

counties. The situation is the same, and presents a similar question as would be presented if the drainage board in these counties was compelled to go into Canada to secure stone, or some other material necessary to be used in improving the river bed in Bottineau county, and the removal of such material from Canada materially benefited a large tract of land in Canada. No doubt of the power of the board to secure such material would be entertained. It would not be contended, seriously, that the land in Canada must be assessed for these benefits proportionally, or the proceedings be subject to a restraining order. There is no more reason for holding an assessment unauthorized in one case than in the other. To claim that the proceedings are void because lands are not assessed for benefits which it is impossible legally to assess is not a tenable proposition as a matter of law. In cases like the one under consideration, we do not think the principle of wilful omission from assessment should have any application. If it were to be enforced in cases like the present, it would result in defeating beneficial drainage projects and make the securing of outlets outside of drainage districts impossible.

For these reasons the order is reversed, and the cause remanded to the District Court for further proceedings.

SPALDING and CARMODY, JJ., dissenting.

SPALDING, J. (dissenting). I regret my inability to concur in the above opinion. I have no doubt the construction of the proposed drain would be of great benefit to the lands affected, but that fact furnishes no warrant for its construction under the present proceedings and law, unless such proceedings are in conformity with the law, and the law is applicable to the situation. It seems that the atmosphere surrounding the question is tainted with the impression that the law must provide a means of draining all lands needing drainage, and that it must be so construed as to apply to all possible contingencies arising, in the efforts made to furnish relief to the owners of such land. The remedy for its failure to make provision for all contingencies lies with the legislature, and not with the courts. I shall briefly state my reasons for concluding that the drainage law is not applicable to this case, but if it is the proceedings are not in conformity with the law.

1. The petition in this case, as applied to Bottineau county, which is the county bordering on the International boundary, requests that the drain "commence at the south side of Bottineau county, in the center of the Mouse river channel, and dredge the river north to the International Boundary Line, thus reclaiming the low land adjoining the river on each side." It will thus be seen that the petition established the starting point and terminus of the proposed drain at the south and north lines of Bottineau county respectively. Section 1821, Rev. Codes 1905, as amended by chapter 93, Laws of 1907, as far as relates to this subject, reads: "A petition for the construction of a drain may be made in writing to the board of drain commissioners, which petition shall designate the starting point and terminus and general course of the proposed drain." Authority is given to the drainage commissioners, under the advice of the surveyors, to vary from the line described in the petition, but no authority is given to vary the source and terminus of the drain. I would not contend that a slight variation would invalidate the proceedings, but the question involved in this case is not any immaterial variation, but it. is as radical as though the drain were located by the commissioners 14 miles west of the Mouse river. The mouth of the drain proposed to be established is approximately 14 miles north of the International Boundary Line. The total cost is estimated at about $142,000. Of this it is estimated that $70,000 must be expended north of the International Boundary Line.

2. The statute, I think, requires title to the right of way to be obtained, unless it is in the state or other superior authority. The title to the right of way north of the boundary line has not been obtained, and is in a foreign municipality or owners over whom neither the drainage nor county commissioners nor the courts of this state have any jurisdiction, and this seems to me to render the proceedings regarding the 14 miles in foreign territory invalid. Sec. 1823, Rev. Codes 1905, as amended 1907.

3. Section 1842, Rev. Codes 1905, as amended in 1907, requires that the drain, when completed, shall be under the charge and control of the county commissioners. The contract entered into with the municipal authorities of Arthur provides that that part of the drain located therein, it being about 14 miles, and on which the successful

operation of the whole project depends, shall be controlled by the municipal authorities of Arthur, but maintained by the commissioners, and this contract is in accordance with a by-law adopted by that municipality, in which it is provided that, when completed, the drain shall be controlled by that municipality, although the entire cost of the construction and maintenance thereof is to be borne by the owners of the land assessed in McHenry and Bottineau counties, North Dakota. I am of the opinion that this provision in the contract, under which alone it is proposed to construct the drain north of the International Boundary Line, is in direct conflict with the provisions of the Code cited.

4. The learned trial judge held that the fact that the lands in the Municipality of Arthur were to be benefited, and not assessed, was a controlling ground for holding the proceeding invalid. The by-law adopted by that municipality describes the lands which are to be benefited therein by the drain, and which are not to share in the burdens. I would not contend that the fact that a small acreage was incidentally benefited would invalidate the proceeding, but here the amount is so great that it seems to me violative of the principles underlying the power to impose special assessments. They can only be imposed by reason of the property assessed being benefited by the improvement, and it is elementary that to render such assessments valid the assessments must be apportioned on all the property benefited in proportion to the respective benefits. Several thousand acres in the Municipality of Arthur entirely escape any share of the burdens, yet are shown to reap special benefits. The fact that such lands lie outside of the jurisdiction is the misfortune of the advocates of the establishment of the drain, and a misfortune which, under the existing statute, I see no legitimate way of providing against. Should their money be expended in the construction of the drain, and thereafter the Municipality of Arthur, for any reason, determine to exercise the control given it by the contract over the 14 miles in Canadian territory, or to exclude the commissioners from keeping it in repair, as it might do at any time should a disagreement arise, the contributors might find themselves in far worse position than now. In the majority opinion reference is made to authorities where lands were wilfully, arbitrarily, or intentionally omitted in making the assessments, and a distinction is drawn

between those cases and the present, to show that the rule does not apply in this case; but it occurs to me that the issue is the fact of omission rather than the purpose of the commissioners in making the omission. In the case at bar it is conceded that the omission was intentional, but it claimed that the fact that the lands omitted are outside the jurisdiction does away with the rule. I may, however, add that because of these lands lying outside of the jurisdiction, I am not as strongly convinced that this point is fatal as I am of those which I have before briefly referred to.

The authorities hold that laws of this nature must be strictly complied with and its terms strictly construed by the courts. This ought especially be true with reference to drainage laws, and particularly with reference to the drainage laws of this state by which almost unlimited powers are given to a board of drainage commissioners on the petition of only six property owners, who may be a very small minority of those required to bear the burdens. The law is subject to great abuse, and by many it is insisted that it is being very widely abused, and many owners of real property required to pay assessments altogether out of proportion to the benefits derived. This may not be a question for the the courts to consider, but, if true, it furnishes a reason for requiring the terms of the statute to be strictly followed. I call attention to Hundley v. Lincoln Park, 67 Ill. 559, as a case which appears to me directly in point, and where the court held, on the establishment of Lincoln Park, in Chicago, that because money derived from assessments in one town was to be expended in another town, the proceedings were rendered invalid. I think the judgment should be affirmed, and am authorized to say that Judge Carmody concurs herein except to paragraph 1.

### On Rehearing.

Per Curiam. Former opinion adhered to.

Spalding, J. (dissenting). A reargument was had in this case. Both the majority and minority of the court adhere to their original opinions. Some minor changes which have been made in the majority opinion, and some suggestions on the reargument, make a few additional words of dissent proper.

In my judgment much more serious questions are involved in this case than any considered in the majority opinion. This is not a case where one municipality is contracting with or constructing works in another municipality in the same state, where the same laws are applicable to all, and where the same legislative body can regulate the power of each municipality, nor is it a case where one state desires to extend municipal work within the limits of another state; but it embraces the proposition of a minor municipality of a subdivision of one nation extending its works of internal improvement within the limits of a foreign, sovereign power, whose laws are not before us, whose legislative action is not shown to have been framed with any reference to such works, whose courts are not construing our law, and who cannot be presumed to take into consideration what improvement is necessary for the promotion of the welfare of the landowners in this state. It is also a question whether the treaty rights of the Federal government are not invaded.

All these suggestions would form a fruitful basis for discussion if it were necessary to pass upon them; but for the reasons given in my former dissent, and for lack of time demanded by other duties they are passed without discussion.

The majority opinion has been somewhat revised with reference to a distinction which appears to be drawn between a drain wholly artificial and one made by deepening and widening the channel of an actual stream. While as a matter of fact there is a distinction between these works, yet, in contemplation of our drainage law, there appears to me to be no distinction whatever. One is made the basis for the assessment of private property, the same as the other, and this is the principal and governing element in the matter. The stream, whether widened and deepened, or only cleared out so as to permit the free passage of surface water, is a drain within the meaning of our drainage law; and all the provisions of that law applicable to assessment, to obtaining the title to the right of way, and other matters, are equally applicable to the natural stream as to the wholly artificial drain. It seems to me that this proceeding is fraught with great danger to the people whose property is being assessed to pay for this so-called improvement. As far as disclosed by the record, the right of way has not been obtained from all the property owners on the North side of the Canada boundary, and certainly, as to those from

whom it has not been obtained, all persons approaching the stream for the purpose of widening or deepening it will be trespassers; and I know of no method by which the right of eminent domain can be exercised by a municipality of this state in a foreign country, and the right of way secured thereby. This, to me, appears to be a question of vital importance, and, alone, fatal to the contention of the appellant.

For these reasons, and many others which might be expressed did time permit, I adhere to my original dissent.

CARMODY, J. I concur in the foregoing dissent.